1
2
3
4
5
6

**LOREN S. YOUNG, ESQ.**
Nevada Bar No. 7567
lyoung@lgclawoffice.com
**LINCOLN, GUSTAFSON & CERCOS, LLP**
3960 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:    (707) 257-1997
Facsimile:    (702) 257-2203

*Attorneys for Defendant Gamo Outdoor S.L.U.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

7
8
9
10
11
12
13
14
15
16

| ZACHARY LONG, individually, Plaintiff, v. GAMO OUTDOOR S.L.U., a Spanish Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, Defendants. | Case No.    2:22-cv-670 <br><br> **DEFENDANT GAMO OUTDOOR S.L.U.'S NOTICE OF REMOVAL** |
| --- | --- |

## DEFENDANT'S NOTICE OF REMOVAL

17
18
19
20
21
22
23
24
25
26
27
28

        Gamo Outdoor S.L.U. ("Gamo Spain") by and through its undersigned counsel, hereby submits this Notice of Removal of the above-entitled case from the District Court of Clark County, Nevada, to the United States District Court for the District of Nevada.  By this petition, Defendant gives notice of the removal of this action.  In support of removal, Defendant Gamo Spain provides the following required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a);

*see also, Dart Cherokee Basin Operating Co., LLC v. Owens¸* 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").  This notice of, and petition for, removal is made pursuant to 28 U.S.C. §§ 1441, *et seq.*, and is proper and appropriate based upon the following:

*///*

## I.   **INTRODUCTION.**

1.   Defendant desires to exercise its right under the provisions of 28 U.S.C. §§ 1441, *et seq.*, to remove this case from the District Court of Clark County, Nevada, where the case was pending under the case style of *Zachary Long v. Gamo Outdoor S.L.U., et al.*  Specifically, 28 U.S.C. § 1441 provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

2.   Plaintiff filed his Complaint on or about July 13, 2021.  (*See* Ex. A, Complaint.)  Gamo Spain was served with the Complaint via registered mail on March 24, 2022.  Through the Complaint, Plaintiff brings negligence and strict product liability claims against Gamo Spain.  (*See Id.* ¶¶ 77-104.)  Plaintiff alleges that Defendant manufactured and distributed a Gamo Shadow Sport .177 caliber pellet air rifle (the "air rifle"), which Robert Ramirez, the father of Plaintiff's friend, purchased sometime prior to August 2016.  (*Id.* ¶¶ 18, 21-22.)  On August 16, 2016, at a sleepover at Robert Ramirez's home, Plaintiff alleges that he was struck by a pellet behind his eye when a friend, Donny Chalmers, was handling and fired the air rifle.  (*Id.* ¶¶ 20, 27, 63.)  The pellet allegedly struck Plaintiff "in the temple, penetrated his skull, and became lodged in his brain behind his eye."  (*Id.* ¶ 65.)

3.   This action has not been tried. However, on or about August 16, 2017, Gamo Spain, along with Gamo Outdoor USA, Inc., the importer of the air rifle, the shooter, Mr. Chalmers, and Robert and Roberto Ramirez were named as defendants in a separate lawsuit filed by Plaintiff in the District Court of Clark County, under docket number A-16-748401-C. (*See* Ex. B, Prior Complaint.) This action is still pending and has not been tried to date. On or about January 30, 2020, Gamo Spain was dismissed from the action due to Plaintiff's failure to attempt service of process or show good

cause for an extension of time for service under Nevada Rules of Civil Procedure 4(e)(1). The dismissal was upheld by the Nevada Court of Appeals. While the appellate issue was pending, Plaintiff filed the present action solely against Gamo Spain.

4.     Defendant voluntarily appears in this action for purposes of removal but reserves all objections, arguments, and defenses to Plaintiff's Complaint.  Thus, this Notice of Removal is filed subject to and with reservation of rights by Defendant, including, but not limited to, defenses and objections to venue, service of process, and any other defenses Defendant might pursue.  A responsive pleading or motion will be filed in accordance with Rule 81 of the Federal Rules of Civil Procedure.

5.     The only pleading received by Defendant in this action is a copy of the filed Complaint, which has been attached as Exhibit A. Therefore, copies of all proceedings, pleadings, and orders provided to Defendant have been attached to this Notice of Removal.

**II.     N̲O̲T̲I̲C̲E̲ ̲O̲F̲ ̲R̲E̲M̲O̲V̲A̲L̲ ̲I̲S̲ ̲T̲I̲M̲E̲L̲Y̲.**

6.     On March 24, 2022, Gamo Spain was served with the Complaint via registered mail. Pursuant to the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is timely filed pursuant to Rule 11 of the Federal Rules of Civil Procedure within thirty days after receipt of the Complaint, which sets forth the claims upon which Plaintiff's action is purportedly based.

**III.     O̲R̲I̲G̲I̲N̲A̲L̲ ̲J̲U̲R̲I̲S̲D̲I̲C̲T̲I̲O̲N̲ ̲E̲X̲I̲S̲T̲S̲ ̲B̲E̲C̲A̲U̲S̲E̲ ̲T̲H̲E̲ ̲P̲A̲R̲T̲I̲E̲S̲ ̲A̲R̲E̲ ̲D̲I̲V̲E̲R̲S̲E̲.**

7.     Removal is authorized by 28 U.S.C. § 1441 and based on the United States District Court's original jurisdiction of the case pursuant to 28 U.S.C. § 1332, because (a) there is diversity of citizenship between Plaintiff and the named defendants and (b) the amount in controversy exceeds $75,000.

**A.     Plaintiff and Defendant are Diverse.**

8.     For purposes of diversity jurisdiction, a natural person is deemed to be a citizen of the state where he or she is domiciled.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

///

9.      A corporation is a citizen of its state of incorporation as well as the state of its principal place of business. 28 U.S.C. § 1332(c)(1). The same test is applied to the citizenship of foreign corporations. *Kennedy v. Sphere Drake Ins.,* 00-36021, 2002 WL 505903, at *1 (9th Cir. Apr. 2, 2002) (citing *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir.1994)).

10.     Based on these foregoing standards, the parties in this case are diverse.

11.     Upon information and belief, and as alleged in the Complaint, at the time of the commencement of this action and at all times thereafter, Plaintiff is and has been a citizen of the State of Nevada.  (Ex. A, Comp., ¶ 1.)

12.     At the time of the commencement of this action and at all times thereafter, Defendant Gamo Spain has been a Spanish corporation with a principal place of business in Spain.  (*Id.* ¶ 2.) Gamo Spain is a citizen of Spain for purposes of diversity jurisdiction.

13.     Therefore, complete diversity exists between Plaintiff (Nevada) and Defendant (Spain).

**B.      The Amount in Controversy Exceeds $75,000.**

14.     In the Complaint, Plaintiff alleges that he sustained injuries after a pellet from an air rifle struck him in the head, which caused him to undergo multiple surgeries.  (Ex. A, Comp., ¶¶ 65-66.)  The pellet has not been removed by surgeons.  (Id. ¶ 66.)  Plaintiff is seeking damages for (1) pain and suffering, (2) medical expenses, (3) loss of earnings and earning capacity, (4) physical impairment, (5) disfigurement, and (6) exemplary and punitive damages.  (Id. "Prayer for Relief" ¶¶ 1-6.)  In the Complaint, Plaintiff specifically states that for each of these damages, he is seeking "an amount in excess of $15,000" which equates to a total of at least $90,000 in damages.  (Ibid.)

15.     In addition, through the prior lawsuit, which is pending against multiple parties not including Gamo Spain, it has been discovered that Plaintiff is claiming past and future developmental problems, infertility issues and vision problems as a result of being shot by Mr. Chalmers, including a daily regimen of multiple medications. In connection with the same incident and same injuries, Gamo Spain is aware that Plaintiff has claimed nearly $1 million in past medical bills and more than $1

million in future medical bills, and Plaintiff has served a demand for several million dollars from Gamo USA related to the air rifle, claiming that Plaintiff's damages far exceed the settlement number.[1] (*See* Ex. C, Plaintiffs Sixty-First Supplement to Early Case Conference List of Witnesses and Production of Documents, dated April 21, 2022, claiming past medical costs of $904,838.29 and providing various scenarios of future medical costs in excess of $1 million.[2]) It is expected that a similar, if not identical, demand will be served on Gamo Spain.

16.     Accordingly, based on the information known from discovery in the prior lawsuit, it is clear that the amount in controversy requirement has been met in this instance.

**IV.     REMOVAL TO THIS DISTRICT IS PROPER.**

17.     Pursuant to 28 U.S.C. §§ 1441, *et seq.*, the right exists to remove this case from the District Court of Clark County, Nevada, to the United States District Court for the District of Nevada, which embraces the place where the action is pending.

**V.     CONCLUSION.**

18.     Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal is being filed with the Clerk for the District Court of Clark County, Nevada, as required by law, and a copy of this Notice of Removal is being served on Plaintiff.

19.     Defendant reserves the right to amend or supplement this Notice of Removal, and Defendant reserves all defenses.

20.     Defendant requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Defendant Gamo Spain prays that this case be removed from the District Court of Clark County, Nevada, to this Court for the exercise of jurisdiction over this action as though

---

[1] Counsel for Gamo Spain in this matter is also co-counsel for Gamo USA in the other action. Thus, counsel has first-hand knowledge of the alleged injuries, the medical bills and records exchanged in discovery, and the damages being claimed in the other action.
[2] This document has been partially redacted to remove potentially confidential health information prior to filing.

this case had been originally instituted in this Court and that no further proceeding be had in the District Court of Clark County, Nevada.

DATED this 22nd day of April, 2022 in Las Vegas, Nevada.

**LINCOLN, GUSTAFSON & CERCOS, LLP**

*/s/ Loren S. Young*

Loren S. Young, Esq.
Nevada Bar No. 7567
3960 Howard Hughes Parkway
Suite 200
Las Vegas, Nevada 89169
(707) 257-1997
(702) 257-2203 (facsimile)
lyoung@lgclawoffice.com

*Attorneys for Defendant*
*Gamo Outdoor S.L.U.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following persons by United States First Class Mail, postage prepaid, and electronic mail, this 22nd day of April 2022:

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.
Robert E. Murdock (Bar No. 4013)
Eckley M. Keach (Bar No. 1154)
521 South Third Street
Las Vegas, NV 89101

*Attorneys for Plaintiff*

By: /s/ *Michelle McCracken*
_____
Michelle McCracken, an employee of
Lincoln Gustafson & Cercos, LLP

# Exhibit A

Electronically Filed
7/13/2021 2:32 PM
Steven D. Grierson
CLERK OF THE COURT

**COMJD**
Robert E. Murdock, Esq.
Nevada Bar No. 4013
MURDOCK & ASSOCIATES, CHTD.
521 South Third Street
Las Vegas, NV 89101
702-685-6111

CASE NO: A-21-837765-C
Department 14

Eckley M. Keach, Esq.
Nevada Bar No. 1154
ECKLEY M. KEACH, CHTD.
521 South Third Street
Las Vegas, NV 89101
702-685-6111
*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ZACHARY LONG, individually,<br><br>Plaintiff,<br><br>vs.<br><br>GAMO OUTDOOR S.L.U., a Spanish corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | CASE NO.:<br>DEPT. NO.:<br><br>**COMPLAINT** |

COMES NOW Plaintiff Zachary Long, by and through his attorneys of record, Murdock & Associates, Chtd. and Eckley M. Keach, Chtd., and for his causes of action, alleges as follows:

**I.     PARTIES**

1.     That at all times mentioned herein, Plaintiff Zachary Long (hereinafter "Zachary") was born on September 15, 2001, and is a resident of Clark County, Nevada.

1

2.      That Defendant Gamo Outdoor S.L.U. is a Spanish Corporation (hereinafter Gamo Spain), with its principle place of business at Carretera Santa Creu de Calafell Nº 43, 08830 Sant Boi de Llobregat, Barcelona, Spain, and it researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the line Gamo Shadow Sport rifles identical to the Shadow Sport rifle that shot Zachary, as well as other, similar single shot, break barrel, spring piston Gamo air rifles.

3.      That Gamo Outdoor USA, Inc. (hereafter Gamo US) is the distributor of guns in the United States that are manufactured by Gamo Spain.

4.      Defendant Gamo Spain and Gamo US, jointly and in active concert with each other, promoted, marketed, distributed, and/or sold the line of Gamo Shadow Sport rifles in the State of Nevada, purposefully availed themselves of the benefits and protections of the State of Nevada, and/or has or had sufficient contacts with the State of Nevada that maintenance of this action in this locale would be consistent with traditional notions of fair play and substantial justice.

5.      That Defendant Gamo Spain and Gamo US are inextricably intertwined, are engaged in a joint enterprise and/or are the alter egos of one another. Plaintiff further alleges upon information and belief that Gamo US is/was the alter ego of Defendant Gamo Spain as set forth herein, and each of them named herein, having influenced and governed the entities, there is such unity of interest and ownership that the entities are inseparable from each other, and adherence to the notion of the separate corporations would sanction fraud or manifest injustice.

6.      Defendant Gamo Spain is liable for the damages caused to Plaintiff as a result of the duties owed to Plaintiff, and the injuries caused by their defective product, separate and apart from their role as alter egos.

2

7.     That the products of Gamo Spain are intentionally distributed to, and sold, in the State of Nevada.

8.     That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Doe defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join such defendants in this action.

9.     That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Roe Corporations I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Roe Corporation is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Roe Corporation defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations and to join such defendants in this action.

10.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants, and each of them, were the agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees of each other, and in

doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees and with the permission, knowledge, consent ratification and/or acknowledgment of each other are vicariously liable for all damages and harm suffered by plaintiff, as herein below alleged, under the doctrine of respondeat superior, in addition to all other theories of liability asserted against said entities in the causes of action which follow.

## II.    JURISDICTION

11.    This Court has jurisdiction over this matter pursuant to Nev. Const. art. VI, § 6, as this Court has original jurisdiction in all cases not assigned to the justices' courts.

12.    This Court has subject matter jurisdiction over this matter pursuant to NRS 4.370(1), as the matter in controversy exceeds $15,000, exclusive of attorney's fees, interest, and costs.

13.    Under NRS 14.080, this Court has statutory jurisdiction over Gamo Spain in that it is a corporation created and existing under the laws of a foreign country, to wit, Spain, and it manufactures, produces, makes, markets or otherwise supplies directly or indirectly a product for distribution, sale or use in this state, to wit, Gamo air guns; as such Gamo Spain may be lawfully served with any legal process in any action to recover damages for an injury to a person resulting from such distribution, sale or use in this state.

14.    That at all times relevant herein, it was reasonably foreseeable to Defendant Gamo Spain that when its products entered the State of Nevada, that Defendant Gamo Spain could be expected to be sued in the state where its products caused the injury. Jurisdiction is appropriate under the Due Process Clause.

15.    Upon information and belief, Defendant Gamo Spain was aware of the national distribution system of its air rifles, including the Shadow Sport, and intended such national

4

distribution, and as a consequence of that awareness, Defendant Gamo Spain indirectly and/or directly served the national market and derived economic benefit therefrom. As such, Defendant Gamo Spain could reasonably anticipate being subject to suit in any forum within that market where its product caused injury.

16.    Upon information and belief, Defendant Gamo Spain directly and purposefully distributed and marketed its Gamo air rifles within the State of Nevada by distributing and selling to retailers, including national and regional retailers such as Walmart, Big 5 Sporting Goods, Bass Pro, and Dick's Sporting Goods, all of whom are known to sell their products in retail stores within the state of Nevada, including single shot, break barrel, spring piston air rifles like the Gamo Shadow Sport.

### III.    GENERAL ALLEGATIONS

17.    Plaintiff hereby re-alleges those allegations contained in paragraphs 1 through 16 herein and incorporates same by reference as though fully set forth herein.

18.    On or about April 15-16, 2016, Plaintiff Zachary Long was a guest at the house of Robert and Roberto Ramirez, father and son, respectively.

19.    Also visiting Robert and Roberto Ramirez at the same time were Donny Chalmers and his brother Brandon Chalmers.

20.    Zachary Long, Brandon Chalmers, and Donny Chalmers were friends with Roberto Ramirez, and were at the Ramirez house for a Friday night sleepover.

21.    Sometime prior to April 15-16, 2016, Robert Ramirez purchased a gun manufactured and distributed in the United States and Nevada by Gamo Spain.

22.    The Gun was a Gamo Shadow Sport .177 caliber pellet air rifle, which was a single shot break barrel, spring piston air rifle, capable of firing a lead .177 caliber pellet at velocities up to

1200 fps, serial number 04-1C-365162-09., which was manufactured on or about February 6, 2009. (Hereinafter referred to as "The Gun".)

23.     The Gun was in the same, or substantially the same, condition on April 15-16, 2016 as it was when it was first purchased, and had not been altered or modified.

24.     The Gun was manufactured by Gamo Spain and distributed in the State of Nevada.

25.     The Gun was in the Ramirez house in which the four young men were gathered and was out in the open.

26.     At approximately 1:00 A.M. on the morning of April 16, 2016, the four young boys were gathered in the family room of the Ramirez home.

27.     At approximately 1:00 A.M. on the morning of April 16, 2016, Donny Chalmers walked into an adjacent room where he picked up The Gun, and as he was holding The Gun, it fired.

28.     Donny Chalmers was unaware that a pellet fired from The Gun could penetrate a human skull and lodge the pellet in a person's brain.

29.     Donny Chalmers was unaware that The Gun was capable of causing death or serious and permanent bodily injuries.

30.     Donny Chalmers was unaware that The Gun was loaded and cocked.

31.     There was nothing on The Gun, or about the condition of The Gun, that would indicate to Donny Chalmers that The Gun was loaded, or that would alert Donny Chalmers that The Gun was loaded and cocked. He had no idea that The Gun had a pellet in it, and that it was cocked and loaded.

32.     Sometime prior to the evening of April 15, 2016, and prior to the time the boys arrived at the Ramirez home for the sleepover, Roberto Ramirez has cocked and loaded The Gun to shoot at a pigeon in the back yard, but before he could fire, the pigeon flew away.

6

33.     Roberto Ramirez placed the loaded and cocked Gun by the doorway to the back yard where it was located when Donny Chalmers picked it up.

34.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that children under the age of eighteen were being shot and injured or killed by Gamo single shot, break-barrel, spring piston air rifle when the shooter did not know that the gun was cocked and loaded and did not know the dangerous characteristics of these types of guns.

35.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that a boy in Puerto Rico, Isaias Marin-Torres, had been shot and killed by his teenage brother who claimed he did not know a Gamo Shadow 1000, a gun with many similarities to The Gun that shot Plaintiff, was cocked and loaded.

36.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that a boy in Louisiana, Rashaad Picquet, had been shot in the head by a teenage boy with a Gamo Model 850 air gun. The boy claimed he did not know the Gamo 850, a single shot, break-barrel, spring piston air rifle, with many similarities to The Gun that shot Plaintiff, was cocked and loaded. The boy claims the gun unexpectedly fired even though he never pulled the trigger. The bullet penetrated Rashaad's skull causing serious and permanent injuries.

37.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that on or about August 15, 2014 in McAlester, OK, a twelve-year-old boy, Justin Ingle, was shot in the head and later died when his eleven year old friend was playing with a Gamo air rifle. The friend did not know the rifle was cocked and loaded when he picked it up to play with it.

38.     Defendant Gamo Spain was aware that in 2006 the Gamo Shadow Sport, and other Gamo single shot, break barrel, spring piston air guns had been the subject of a recall by the Consumer

7

Product Safety Commission (CPSC) because those guns could unexpectedly fire without anyone touching the trigger.

39.     Defendant Gamo Spain and Gamo US advised the CPSC the unexpected firing was caused by the scope mount. While there may have been an issue with the scope mount, upon information and belief, Gamo US and Defendant Gamo Spain failed to advise the CPSC that the problem was not fully corrected and therefore its statements to the CPSC were false and misleading.

40.     Upon information and belief, the problem with these Gamo single shot, break barrel, spring piston air guns, including the Gamo Shadow Sport, unexpectedly firing when the trigger was not being pulled at the moment of firing was not corrected.

41.     On April 16, 2016, several models of Gamo single shot, break barrel, spring piston air guns, including the Gamo Shadow Sport, that could unexpectedly fire without anyone touching the trigger were still being sold, being used, and/or were in the hands of unsuspecting users, such as Donny Chalmers.

42.     The Gun was defective in that The Gun could unexpectedly fire when the trigger was not being pulled.

43.     The Gun was defective in that sometimes The Gun can fire when the trigger is not being pulled and the user is attempting to engage the safety, or the gun can fire even if the safety is engaged.

44.     Even though Defendant Gamo Spain knew, or should have known, that several models of Gamo single shot, break barrel, spring piston air guns, including the Gamo Shadow Sport, could unexpectedly fire without anyone touching the trigger and were in the hands of unsuspecting users, such as Donny Chalmers, Defendant Gamo Spain did not take reasonable steps to correct

8

the problems, to remove these dangerous guns from unsuspecting users, or to provide an adequate warning of the dangerous condition.

45.     The trigger sear and sear bar were defective in that the interface surface between the two parts had rounded edges which made it possible for the rifle to be left in a state (the "null region") in which it could fire by being bumped and/or touching the safety, under certain foreseeable conditions. This defect made it possible for the rifle to fire without operating/pulling the trigger and fire with the safety in the "ON" position. This condition is a design defect resulting from Defendant Gamo Spain's design and manufacturing specification that the sear and sear bar have rounded edges. The condition was made even worse by Defendant Gamo Spain's failure to adequately harden the metal component parts at issue.

46.     These defects exist in numerous rifles and various models that Defendant Gamo Spain made and those currently in production for sale to consumers. Defendant Gamo Spain and Gamo US had received complaints from users about rifles unexpectedly firing. The "null region" defect was also reported in blog articles on the internet prior to the manufacture of the rifle which injured Plaintiff, but Defendant Gamo Spain failed to adequately investigate those reports and address this significant safety concern.

47.     The original design of the Gamo rifle trigger mechanism recognized that the problem could occur and made provision to prevent it by including a mechanism blocking release of the sear if the trigger was not pulled. At some point to lower costs slightly, Defendant Gamo Spain stopped manufacturing rifles with this safety feature functioning, even though the parts designs which included vestiges of the safety system continued to be used. Defendant Gamo Spain just did not maintain the tolerances necessary for the system to function. Thus, Defendant Gamo Spain

actually had an alternative design which would have prevented the injury to Plaintiff that was built into its rifles, but Defendant Gamo Spain failed to use it.

48.     Defendant Gamo Spain could have made an even safer design by using the safety mechanism referenced above and making the operating surfaces of the sear and sear bar interface sharp instead of rounded and making them from harder metal. This alternative design is used in many other pellet guns and other types of firearms.

49.     On April 16, 2016, The Gun was loaded with a Gamo Hunter .177 caliber lead pellet designed for greater impact, which was manufactured and distributed by Defendant Gamo Spain.

50.     The Gun did not have an automatic safety that would automatically engage and prevent the trigger from being pulled unless and until the user, including Donny Chalmers, released and disengaged the safety. At all times herein, Defendant Gamo Spain knew that many other manufacturers and distributors of single shot break barrel air guns included an automatic safety on its guns, and that the inclusion of such on Gamo air guns was feasible and would not affect the performance of the rifle.

51.     The Gun did not have a load indicator or cocking indicator that would have alerted a user, including Donny Chalmers, that The Gun was loaded and cocked even though the inclusion of such on Gamo air guns was feasible and would not affect the performance of the rifle.

52.     The Gun failed to meet trigger pull standards that are meant to protect users and victims from accidental shootings and injuries.

53.     The Gun did not have warnings that would alert a user, including Donny Chalmers, of the dangerous conditions of The Gun, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer the dangerous conditions of The Gun.

10

54.     Neither The Gun nor any written material provided with the gun, had any warnings that the gun could unexpectedly fire when the trigger was not being pulled.

55.     Neither The Gun nor any written material provided with the gun had any warnings that the trigger sear and sear bar were or could be defective in that the interface surface between the two parts had rounded edges which made it possible for the rifle to be left in a state (the "null region") in which it could fire by being bumped and/or touching the safety, under certain foreseeable conditions and that this made it possible for the rifle to fire without operating/pulling the trigger and fire with the safety in the "ON" position.

56.     The Gun did not have warnings that would alert a user, including Donny Chalmers,

a.   That The Gun was, or may be, loaded and cocked, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer that The Gun was, or may be, loaded and cocked.

b.   The user needed to undertake any investigation to determine if The Gun was cocked and loaded prior to handling The Gun, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer he needed to undertake any investigation to determine if The Gun was cocked and loaded prior to pulling the trigger.

c.   Of the of the true nature and extent of the severity injuries that could occur if a person was struck with a pellet fired from The Gun, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer the true nature and extend of the severity injuries that could occur if a person was struck with a pellet fired from The Gun.

d.   That a cocked and loaded gun maintained its muzzle velocity and penetrating power even when The Gun had been cocked for a period of time prior to shooting.

11

e.   About the nature of the hazard, the consequences, avoidance, and seriousness level of The Gun, as required under ANSI Z535 (et seq), and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer the nature of the hazard, the consequences, avoidance, and seriousness level of The Gun.

57.   Defendant Gamo Spain did not provide an adequate warning on The Gun as required under Nevada law, where a product must include a warning that adequately communicates the dangers that may result from its use or foreseeable misuse; otherwise, the product is defective.

58.   In Nevada, a general warning is insufficient, and Defendant Gamo Spain failed to provide an adequate warning on The Gun as required under Nevada law that is (1) designed to reasonably catch the consumer's attention, (2) that the language be comprehensible and give a fair indication of the specific risks attendant to use of the product, and (3) that warnings be of sufficient intensity justified by the magnitude of the risk.

59.   The Gun did not have a mechanism to release the spring after The Gun had been loaded and cocked, but not fired, for a period of time.

60.   The Gun was designed such that there was not an effective, readily usable, method to unload a cocked and loaded gun.

61.   Defendant Gamo Spain failed to provide an adequate warning on The Gun as to how to properly and safely unload a cocked and loaded gun.

62.   Gamo Spain and Gamo US failed to provide any tools to allow a user to unload a cocked and loaded gun.

63.   Believing The Gun was not loaded and cocked, Donny Chalmers picked up The Gun and The Gun fired.

12

64.     Donny Chalmers would have heeded an adequate warning that The Gun could fire unexpectedly even when the trigger was not pulled, that the gun was cocked and loaded, and/or that the gun could seriously injure or kill a human being.

65.     The Gamo Hunter .177 caliber pellet, designed for greater impact, struck Plaintiff Zachary Long in the temple, penetrated his skull, and became lodged in his brain behind his eye, all of which caused severe and horrendous injuries.

66.     The pellet was not able to be removed by the surgeons and remains lodged in the brain of Plaintiff Zachary Long.

67.     Defendant Gamo Spain was aware of the serious injuries and damage that a Gamo Hunter .177 caliber lead pellet could inflict when fired from The Gun.

68.     According to the barrel of The Gun, some pellets can be fired from The Gun at 1200 fps while others with lead pellets, such as the pellet that struck Plaintiff Zachary Long, travel at a velocity up to 1000 fps.

69.     Defendant Gamo Spain was aware that The Gun, firing these Gamo Hunter pellets, could inflict serious bodily injury or death.

70.     An air gun, like The Gun, which is powerful enough to take down a hog, penetrate the human skull, or kill a person is not a firearm under Federal law.

71.     Neither the State of Nevada nor the Federal government have laws regulating the sale of air guns such as The Gun, but many other states and other countries have laws regulating air guns, such as The Gun used in this case due to the serious nature of the injuries they can inflict.

72.     Defendant Gamo Spain was aware of safety restrictions placed upon such air guns by these other states and countries due to the dangers associated with air guns and the serious injuries they could cause.

13

73.    It is well known in the industry, including to Defendant Gamo Spain, that air guns, such as the pellet gun in this case, are purchased for and used by children and/or persons with little to no experience in the handling of guns, such as Donny Chalmers.

74.    Defendant Gamo Spain also knew from their surveys that the majority of air guns purchased are purchased as gifts for someone else, and the overwhelming majority of those gifts are for children and grandchildren.

75.    Defendant Gamo Spain also knew air guns can be sold to children in many states, such as Nevada, that do not regulate the sale of air guns such as The Gun or restrict the age at which a child can purchase an airgun.

76.    Defendant Gamo Spain failed to take reasonable steps in the design, manufacture and distribution of The Gun, and in the warnings to potential users of The Gun, to prevent the injuries suffered by Plaintiff.

## IV.    FIRST CLAIM FOR RELIEF

### (NEGLIGENCE)

77.    Plaintiff repleads and realleges, and incorporates them herein by reference, each and every allegation contained in paragraphs 1-76 as if though fully restated herein.

78.    As set forth hereinabove, Defendant Gamo Spain had a duty to Plaintiff, which duty was breached, causing the injuries and damages set forth herein.

79.    Defendant Gamo Spain had a duty to take reasonable precautions to prevent a foreseeable risk of harm.

80.    Prior to April 16, 2016 Defendant Gamo Spain knew, or should have known, that injuries occurred, including death or serious and permanent injuries, when someone was shot with a Gamo air rifle by someone who did not know the gun was cocked and loaded.

14

81.     Defendant Gamo Spain breached its duty to Plaintiff, and was negligent, with regard to the warnings, design and manufacture of The Gun, including, but not limited to, some and/or all of the matters described in Paragraphs 17-76 above and the other Paragraphs herein.

82.     Defendant Gamo Spain further breached its duty to Plaintiff by failing to take the steps necessary to ensure that the Gamo air rifles it was distributing, including The Gun, were safe, that the warnings were adequate, and that the design and manufacture of the Gamo air rifles it was distributing, including The Gun, were free from design and manufacturing defects.

83.     As a direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future and for the rest of his life, all to his general damage in an amount in excess of $15,000.00.

84.     As a further and direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long has incurred special damages including expenses for medical care and treatment in the past and he will continue to incur expenses for medical care and treatment in the future and for the rest of his life, all in an amount in excess of $15,000.00, and in a sum according to proof at trial.

85.     As a further direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer a loss of earnings and earning capacity, in the past and in the future and for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

86.     As a further direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer a devastating and horrendous physical

15

impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

87.     As a further direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

88.     The conduct of Defendant Gamo Spain, as herein alleged, was done with a conscious and reckless disregard for the rights and safety of others, including Plaintiff Zachary Long, and/or Defendant Gamo Spain is guilty of oppression, fraud or malice, express or implied, and Plaintiff Zachary Long, in addition to the compensatory damages sought herein, is entitled to recover exemplary and punitive damages for the sake of example and by way of punishing the defendant in an amount in excess of $15,000.00 pursuant to NRS 42.005 et. seq.

89.     It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

## V.    SECOND CLAIM FOR RELIEF

### (STRICT PRODUCTS LIABILITY)

90.     Plaintiff repleads and realleges, and incorporates them herein by reference, each and every allegation contained in paragraphs 1-89 as if though fully restated herein.

91.     As set forth herein, Defendant Gamo Spain was the designer, manufacturer and distributor of air guns, including The Gun that was used in this case, and was otherwise engaged in the business of selling such a product, and placed The Gun in the stream of commerce which it expected to, and did, reach the user or consumer without substantial change in the condition in which it is sold.

16

92.     The Gun was unreasonably unsafe or unreasonably dangerous and in a defective condition when it was designed, manufactured, and/or sold, which defects include, but are not limited to, some and/or all of the matters described in Paragraphs 17-76 above and the other Paragraphs herein.

93.     These defects were known to Defendant Gamo Spain but were unknown to Plaintiff or Donny Chalmers on April 16, 2016.

94.     These defects made The Gun unreasonably dangerous to users and foreseeable users, such as Donny Chalmers, and to foreseeable victims of these defects such as Plaintiff.

95.     Defendant Gamo Spain placed The Gun in the stream of commerce which it expected to, and did, reach the user or consumer, including Donny Chalmers, without substantial change in the condition in which it was sold.

96.     The Gun was in the same, or substantially the same condition on the date Plaintiff was injured as when it was placed into the stream of commerce by Defendant Gamo Spain.

97.     The defects include, but are not limited to, lack of an auto safety, lack of a cocked or load indicator, lack of adequate warnings, lack of a method to unload a cocked and loaded gun, inability to readily determine if a gun is cocked and loaded, insufficient trigger pull, and The Gun could fire when the trigger was not being pulled, all as set forth hereinabove.

98.     As a direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future and for the rest of his life, all to his general damage in an amount in excess of $15,000.00.

17

99.     As a further and direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long has incurred special damages including expenses for medical care and treatment in the past and he will continue to incur expenses for medical care and treatment in the future and for the rest of his life, all in an amount in excess of $15,000.00, and in a sum according to proof at trial.

100.    As a further direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer a loss of earnings and earning capacity, in the past and in the future and for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

101.    As a further direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer a devastating and horrendous physical impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

102.    As a further direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

103.    The conduct of Defendant Gamo Spain, as herein alleged, was done with a conscious and reckless disregard for the rights and safety of others, including Plaintiff Zachary Long, and/or Defendant Gamo Spain is guilty of oppression, fraud or malice, express or implied, and Plaintiff Zachary Long, in addition to the compensatory damages sought herein, is entitled to recover exemplary and punitive damages for the sake of example and by way of punishing the defendant in an amount in excess of $15,000.00 pursuant to NRS 42.005 et. seq.

18

104.   It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as set forth below:

1.    For general damages, including but not limited to pain and suffering, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future, in an amount in excess of $15,000.00;

2.    For special damages, including but not limited to medical expenses for medical care and treatment, in the past and in the future, in an amount in excess of $15,000.00;

3.    For damages for loss of earnings and earning capacity, in the past and in the future in an amount in excess of $15,000.00;

4.    For damages for physical impairment, in the past and in the future, in an amount in excess of $15,000.00;

5.    For damages for disfigurement, in the past and in the future, in an amount in excess of $15,000.00;

6.    For exemplary and punitive damages against Defendant Gamo Spain in an amount in excess of $15,000.00;

7.    For a finding that Gamo US is the alter ego of Defendant Gamo Spain;

8.    For attorney's fees and costs;

9.    For pre-judgment and post-judgment interest; and

10.    For such other and further relief as the Court deems just and proper.

19

1

## VII.    DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands a trial by jury on all issues so triable.

3

DATED this 13th day of July, 2021.

4

5

MURDOCK & ASSOCIATES, CHTD.

6

ECKLEY M. KEACH, CHTD.

7

/s/ Eckley M. Keach

8

Robert E. Murdock      Bar No. 4013

Eckley M. Keach        Bar No. 1154

9

521 South Third Street

10

Las Vegas, NV  89101

Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit B

Electronically Filed
8/16/2017 3:08 PM
Steven D. Grierson
CLERK OF THE COURT

1
**FAC**
Robert E. Murdock, Esq.

2
Nevada Bar No. 4013

3
MURDOCK & ASSOCIATES, CHTD.
521 South Third Street

4
Las Vegas, NV 89101
702-685-6111

5

6
Eckley M. Keach, Esq.
Nevada Bar No. 1154

7
ECKLEY M. KEACH, CHTD.
521 South Third Street

8
Las Vegas, NV 89101

9
702-685-6111
*Attorneys for Plaintiff*

10

11
**DISTRICT COURT**

12
**CLARK COUNTY, NEVADA**

13
ZACHARY LONG, a minor, by and through

14
Aura Truelove, his Natural Mother,

| | |
|---|---|
| CASE NO.: A-16-748401-C | |
| DEPT. NO.: XXXII | |

15
                                Plaintiff,

16
vs.

17

18
ROBERT      RAMIREZ,      individually,
ROBERTO      RAMIREZ,      individually,

19
DONNY CHALMERS, individually; GAMO
OUTDOOR   USA   INC.,   a   Florida

20
corporation; INDUSTRIAS EL GAMO, S.A.,
a Spanish corporation, DOES I through X,

21
inclusive;  and  ROE  CORPORATIONS  I
through X, inclusive,

22

23
                                Defendants.

**FIRST AMENDED COMPLAINT**

24

25
            COMES NOW Zachary Long, a minor, by and through Aura Truelove, his Natural Mother,

26
by and through his attorneys of record, Murdock & Associates, Chtd. and Eckley M. Keach, Chtd.,

27
and for his causes of action, alleges as follows:

28

1

1. That at all times mentioned herein, Plaintiff Zachary Long (hereinafter "Zachary") was and is a resident of Clark County, Nevada.

2. That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Robert Ramirez, was and is a resident of Clark County, Nevada.

3. That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Roberto Ramirez, was and is a resident of Clark County, Nevada, and was and is the natural son of Defendant Robert Ramirez, and lived at home with his father.

4. That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Donny Chalmers, was and is a resident of Clark County, Nevada.

5. That Gamo Outdoor USA, Inc. is a Florida Corporation (hereinafter GOUSA);

6. That INDUSTRIAS EL GAMO, S.A., is a Spanish corporation (hereinafter IEGSA).

7. That GOUSA is the distributor of guns in the United States that are manufactured by IEGSA. Upon information and belief, IEGSA has an ownership stake in GOUSA. That GOUSA and IEGSA are inextricably intertwined and/or are the alter egos of one another. That the products of GOUSA and IEGSA are intentionally distributed to, and, sold, in the State of Nevada.

8. That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Doe defendants

2

when same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join such defendants in this action.

9. That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Roe Corporations I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Roe Corporation is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Roe Corporation defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations and to join such defendants in this action.

10. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants, and each of them, were the agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees of each other, and in doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees and with the permission, knowledge, consent ratification and/or acknowledgment of each other are vicariously liable for all damages and harm suffered by plaintiff, as herein below alleged, under the doctrine of respondeat superior, in addition to all other theories of liability asserted against said entities in the causes of action which follow.

//
//

3

## **GENERAL ALLEGATIONS**

11. Plaintiff hereby re-alleges those allegations contained in paragraphs 1 through 10 herein and incorporates same by reference as though fully set forth herein.

12. On or about April 15, 2016, Zachary Long was a guest at the house of Robert and Roberto Ramirez.

13. Also visiting Robert and Roberto Ramirez at the same time was Donny Chalmers.

14. Zachary Long, Roberto Ramirez, and Donny Chalmers were friends and were visiting with each other.

15. The three young men were gathered in the family room of the Ramirez home.

16. Upon information and belief, sometime prior to April 15, 2016, Robert Ramirez purchased a gun manufactured by Industrias El Gamo, S.A. and distributed by Gamo USA.

17. The gun was a GAMO Shadow Sport .177 caliber pellet air rifle, single shot with a break barrel, capable of firing a lead .177 caliber pellet at 1000 fps (hereinafter referred to as "The Gun").

18. The Gun was in the house in which the three young men were gathered and was out in the open.

19. Donny Chalmers picked up the Gun, and as he was holding the Gun, it fired.

20. Donny Chalmers believed it was a toy gun. He knew nothing about guns and had no idea that a gun that seemed like a toy gun, was real, that it had a pellet in it, and that it was "pumped."

21. Donny Chalmers placed his finger on the trigger and the Gun fired.

22. The Gun discharged firing a GAMO Hunter .177 caliber lead pellet designed for greater impact.

4

23. The .177 caliber pellet struck Zachary Long in the temple causing severe and horrendous injuries.

24. Neither Robert nor Roberto Ramirez took any steps to properly and safely store the Gun.

25. Neither Robert nor Roberto Ramirez took any steps to place a trigger lock, or any other safety device on the Gun to prevent an accidental or inadvertent discharge.

26. Neither IEGSA nor GOUSA sold the Gun with a trigger lock to prevent an accidental or inadvertent discharge.

27. Neither Robert nor Roberto Ramirez took any steps to insure the Gun was not sitting around in a loaded condition.

28. Neither Robert nor Roberto Ramirez took any steps to warn Donny Chalmers that the Gun was, or could be loaded.

29. Upon information and belief, when Donny Chalmers picked up the Gun, he was unaware the Gun was loaded.

30. Upon information and belief there was nothing on the Gun, or about the condition of the Gun, that would indicate to Donny Chalmers that the Gun was loaded.

31. Upon information and belief Donny Chalmers did not ask anyone if the Gun was loaded nor did he undertake any investigation to determine if the Gun was loaded, if it had a safety mechanism, or if it could accidentally or inadvertently discharge.

32. Gamo Outdoor USA was the distributor for guns manufactured by Industrias El Gamo, S.A., including the .177 caliber pellet air rifle that is the subject of this complaint.

33. The Gun was manufactured by IEGSA and distributed to the State of Nevada by GOUSA.

34. The Gun was defectively designed in that it did not have a trigger lock on it nor did it have a warning system which would indicate that the gun was loaded and/or cocked. The defect

existed when the Gun left the hands of GOUSA and IEGSA.

35. Alternatively, the Gun had a manufacturing defect in that the Gun could fire without pulling the trigger in a safe fashion. The defect existed when the Gun left the hands of GOUSA and IEGSA.

36. Alternatively, there was a failure to warn of the danger of the Gun—that it was a real gun and could be loaded and cocked, *on the Gun itself* in markings that would convey to the reasonable consumer that the Gun was a danger and not a toy. For example, the Gun violated ANSI Z535 (et. seq.) by failing to describe the nature of the hazard, the consequences, avoidance, and seriousness level on The Gun.

37. Regarding the particular type of pellet in the Gun on April 15, 2016, GAMO states on its website GAMOUSA.com, "Due to the heavier weight and dome configuration, this pellet performs with terrific impact, even at long distance shots." The pellet has a "round nose" which makes it "hard hitting" such that "This pellet is capable of taking down a fairly good size hog within 35 yards." (gamousa.com).

38. According to the barrel of the Gun, some pellets can be fired from the Gun at 1200 fps while others with lead pellets, such as the pellet that struck Zachary Long, travel at a velocity of 1000 fps.

39. GAMO and Industrias El Gamo, S.A. were aware that this particular pellet gun, firing these particular pellets could inflict serious bodily injury since they touted its ability to inflict injury on a hog.

40. Even though GAMO and Industrias El Gamo, S.A. were aware that this particular pellet gun, firing these particular pellets could inflict serious bodily injury, due to the fact that this

was a pellet gun, they were not required to follow all of the rules and regulations required of firearm and firearm ammunition manufacturers.

41. A pellet gun, even one powerful enough to take down a hog, is not a firearm under Federal law.

42. 18 U.S.C. § 921(a)(3) states: "The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

43.  Because a pellet gun, such as the one involved in this suit, uses compressed air and not an explosive to expel a projectile, it is not a firearm under Federal law and is not subject to the rules and regulations relating to the safety of firearms and firearm ammunition.

44. Many states, including Nevada, do not have air gun laws.

45. However, even though neither the State of Nevada nor the Federal government have such laws, approximately half of the other states have laws regulating air guns, such as the pellet gun used in this case.

46. Moreover, many modern countries, including Australia, Brazil, Canada, Czech Republic, France, Germany, Isle of Man, Italy, Netherlands, New Zealand, Poland, Singapore, South Africa, Sweden, United Kingdom have laws regulating air guns, such as the pellet gun used in this case.

47. While GAMO and Industrias El Gamo, S.A. may not have violated any specific laws in Nevada regarding the manufacture and sale of air guns, such as the pellet gun in this case, they were well aware of safety restrictions placed upon such weapons.

7

48. GAMO and Industrias El Gamo, S.A. knew many states and countries regulated air guns, such as the pellet gun in this case, because of their dangers.

49. It is well known in the industry, including to GAMO and Industrias El Gamo, S.A. that air guns, such as the pellet gun in this case, can fire or discharge unexpectedly and could cause serious injury.

50. It is well known in the industry, including to GAMO and Industrias El Gamo, S.A. that air guns, such as the pellet gun in this case, are used by children and/or persons with little to no experience in the handling of guns.

51. The gun at issue was manufactured on an unknown date.

52. It bears serial number 04-1C (or possibly "10") 365162-09.

53. Defendants knew, or with the exercise of due care should have known, that this particular pellet gun, firing these particular pellets, would inflict serious bodily injury if they were to strike a person.

54. Plaintiff's injuries were caused by the negligence, and gross negligence, of defendants, and each of them, proximately causing the injuries, damages, pain and suffering as complained of herein.

55. In addition, and as detailed hereinabove, as to IEGSA and GOUSA, Plaintiff's injuries were caused by the design defect and/or manufacturing defect of The Gun and they are strictly liable for all such injuries related thereto.

56. Defendants, and each of them, had a duty to Zachary Long, which as detailed hereinabove, was breached by these defendants.

57. As a direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer great pain and suffering of

8

body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, all to his general damage in an amount in excess of $15,000.00.

58. As a direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG will continue to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the future and for the rest of his life, all to his general damage in an amount in excess of $15,000.00.

59. As a further and direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG has incurred expenses for medical care and treatment in an amount in excess of $15,000.00, and in a sum according to proof at trial.

60. As a further and direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG will continue to incur expenses for medical care and treatment for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

61. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a loss of earnings and earning capacity, in the past and in the future for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

62. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a devastating and horrendous physical impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

63. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

64. The negligent conduct, actions and breaches by defendants were intentional, willful, wanton, oppressive, malicious and with a conscious disregard to the rights of plaintiff and the decedent; plaintiff seeks exemplary and punitive damages in an amount in excess of $15,000.00.

65. It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as set forth below:

1.  For general damages, including but not limited to pain and suffering, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future, in an amount in excess of $15,000.00;

2.  For special damages, including but not limited to medical expenses for medical care and treatment, in the past and in the future, in an amount in excess of $15,000.00;

3.  For damages for loss of earnings and earning capacity, in the past and in the future in an amount in excess of $15,000.00;

4.  For damages for physical impairment, in the past and in the future, in an amount in excess of $15,000.00;

5.  For damages for disfigurement, in the past and in the future, in an amount in excess of $15,000.00;

10

6.     For punitive damages in an amount in excess of $15,000.00;

7.     For attorney's fees and costs;

8.     For pre-judgment and post-judgment interest; and

9.     For such other and further relief as the Court deems just and proper.

DATED this 16th day of August, 2017.

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.

/s/ Robert E. Murdock

Robert E. Murdock     Bar No. 4013
Eckley M. Keach       Bar No. 1154
521 South Third Street
Las Vegas, NV  89101
Attorneys for Plaintiff

11

# Exhibit C

**SUPPL**
Robert E. Murdock, Esq.
Nevada Bar No. 4013
MURDOCK & ASSOCIATES, CHTD.
521 South Third Street
Las Vegas, NV 89101
702-685-6111

Eckley M. Keach, Esq.
Nevada Bar No. 1154
ECKLEY M. KEACH, CHTD.
521 South Third Street
Las Vegas, NV 89101
702-685-6111
*Attorneys for Plaintiff*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| ZACHARY LONG, individually,<br><br>                              Plaintiff,<br><br>vs.<br><br>DONNY CHALMERS, individually; GAMO OUTDOOR USA INC., a Florida corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>                              Defendants. | CASE NO.: A-16-748401-C<br>DEPT. NO.: IX<br><br><br>**PLAINTIFF'S SIXTY-FIRST SUPPLEMENT TO EARLY CASE CONFERENCE LIST OF WITNESSES AND PRODUCTION OF DOCUMENTS** |

COMES NOW Plaintiff Zachary Long, by and through Aura Truelove, his natural mother, by and through his attorneys of record, Murdock & Associates, Chtd. and Eckley M. Keach, Chtd., and hereby supplements his early case conference disclosures pursuant to NRCP 16.1 as follows.

**New information appears in bold.**

//

//

1

## I. <u>DOCUMENTS</u>

1. Medical and billing records from ███████████████, bate stamped UMC-00001-208 (provided on a CD);

2. Photos of Zachary Long, bate stamped ZACH-0001-113 (Color photos provided on a CD).

3. Videos of Zachary Long (provided on a CD).

4. Pictures of Brandon Chalmers Facebook page, bate stamped CHALMERS-FB-001-2 (provided on a CD);

5. CSE Insurance Policy for insured Robert Ramirez, bate stamped CSE INS-001-2 (provided on a CD);

6. Records received by LVMPD Records and Fingerprint Bureau in response to a Subpoena, bate stamped (LVMPD-0001-23);

7. CD copy of Aura Truelove's audio interview, received by LVMPD Records and Fingerprint Bureau in response to a Subpoena (CD will be sent by US Mail);

8. Answer by Defendant Donald Chalmers, filed on March 29, 2017;

9. Medical and billing records from ███████████████, bate stamped ███0001-4;

10. Medical and billing records from █████████████████████████, bate stamped ███0001-33.

11. Medical and billing records from █████████████████████████, bate stamped █████0001-15.

12. Medical and billing records from ████████████████████████, bate stamped ████0001-25.

13. Documents from Aflac, bate stamped PL00001-10.

14. ▮▮ Invoice, bate stamped PL00011.

15. ▮▮▮▮▮▮ Statement, bate stamped PL00012.

16. ▮▮▮▮ Statement, bate stamped PL00013-14.

17. ▮▮▮▮▮ Statement, bate stamped PL00015-17.

18. ▮▮▮ Statement, bate stamped PL00018.

19. ▮▮▮▮▮▮ Statement, bate stamped PL00019-21.

20. ▮▮▮▮ Statement, bate stamped PL00022.

21. ▮▮▮▮▮ Notes, bate stamped PL00023-33.

22. ▮▮▮▮▮ Notes, bate stamped PL00034-42.

23. ▮▮▮▮▮▮ Statement, bate stamped PL00043.

24. ▮▮▮▮▮ Clinical Summary, bate stamped PL00044.

25. ▮▮▮▮▮ Statement, bate stamped PL00045.

26. ▮▮▮▮ Statement, PL00046.

27. ▮▮ billing, bate stamped PL00047-96.

28. ▮▮ Discharge, bate stamped PL00097-111.

29. ▮▮▮▮▮ Prescription, bate stamped PL00112-113.

30. ▮▮▮▮▮▮ Discharge Instructions, bate stamped PL00114-116.

31. ▮▮ Statements, bate stamped PL00117-133.

32. ▮▮▮▮▮ Review Denial, bate stamped PL000134-138.

33. ▮▮▮▮ letter regarding inpatient coverage, bate stamped PL00139-140.

34. ▮▮▮▮▮ Summary, bate stamped PL00141-148.

35. ▮▮▮▮ Statements, bates stamped PL00149-200.

36. ▮▮▮▮▮ Statement, bate stamped PL00201.

3

37. Medical and billing records from ████████████████████████████, bate stamped NS0001-15.

38. Billing records from ████ for the period 4/16/16 through 6/24/17, bate stamped ████-00209-253.

39. Case Report No.: LLV160416000364 (redacted), received by LVMPD on 8/4/17, bate stamped LVMPD-0024-27.

40. Medical records from ████████████████████████████████, bate stamped ████0001-47.

41. Medical records from ████ for service date June 24, 2017, bate stamped ████-00254-267.

42. Billing records from ███████████████████████████████ bate stamped ████V0048-64.

43. Affidavit of the Manager of LVMPD Records and Fingerprint Bureau, bate stamped LVMPD-0028-31, and CD copy of Donald Chalmers audio interview produced in response to a Subpoena to LVMPD (CD will be sent by US mail).

44. Donny Chalmers's transcribed audio interview, bate stamped CHALMERS-000-023.

45. Fax from Doc Request for no records from ████████████████████████, bate stamped DOC001-4;

46. Medical records from ████████████████████████████ bate stamped ████0001-209;

47. Billing records from ████████████████, bate stamped ████████0001-7;

48. Medical and billing records from ██████████████, bate stamped ████0001-84;

49. Roberto Ramirez's transcribed audio interview, bate stamped RR0001-33;

50. Robert Ramirez's transcribed audio interview, bate stamped RR0034-71;

4

51. Name change filed with the Florida Secretary of State changing the name of Gamo USA, Corp. to Gamo Outdoor USA, Inc., bate stamped GM0001-2;

52. "About" page from Defendant Gamo Outdoor USA, Inc.'s Facebook page as of September 23, 2019, bate stamped GM0003;

53. "Our Story" section on the "About" page from Defendant Gamo Outdoor USA, Inc.'s Facebook page as of September 23, 2019, bate stamped GM0004;

54. "Contact" page from the website gamousa.com as of September 23, 2019, bate stamped GM0005-6;

55. "About Us" page from the website gamousa.com as of September 23, 2019, bate stamped GM0007-9;

56. "Patents" page from the website gamousa.com as of September 23, 2019, bate stamped GM0010-32.

57. Complaint for Declaratory Judgment filed by Defendant GAMO Outdoor USA, Inc. in the U.S District Court, Southern District of Florida, Miami Division, bate stamped GM0033-40.

58. Gamo Outdoor USA, Inc. Linked in page October 3, 2019, bate stamped GM0041-43.

59. Link to Popular Science magazine from February 1958, page 88, describing the load indicator that pops out to show when a chamber is loaded, bate stamped PS0001-2, https://books.google.com/books?id=3CUDAAAAMBAJ&pg=PA88&lpg=PA88&dq=crosman +400+load+indicator&source=bl&ots=gwdggaFWWi&sig=ACfU3U3rdEIb4A2bNYJYmRh0 LFl6R19yqQ&hl=en&sa=X&ved=2ahUKEwi1q5XFu_HkAhWpJzQIHXAkAMAQ6AEwCH oECAgQAQ#v=onepage&q=crosman%20400%20load%20indicator&f=false.

60. Link to Boys' Life magazine from February 1958, page 50, describing the load indicator that pops out to show when a chamber is loaded, bate stamped BL0001-2, https://books.google.com/books?id=BRTfiTLyPPMC&pg=PA50&lpg=PA50&dq=loaded+cha

5

mber+indicator+pellet+gun&source=bl&ots=uQXky4MA2K&sig=ACfU3U3XwcPfMXNjUi
D5UCD47Luvsbfh2w&hl=en&ppis=_e&sa=X&ved=2ahUKEwjKwankuPHkAhUlHzQIHbqh
CTY4MhDoATABegQICRAB#v=onepage&q=loaded%20chamber%20indicator%20pellet%2
0gun&f=false.

61. United States General Accounting Office Report from March 1991 on Accidental Shootings, bate stamped GAO0001-52.

62. Original of Popular Science magazine from February 1958, available for inspection upon request.

63. Original of Boys' Life magazine from February 1958, available for inspection upon request.

64. Gamo 6110017154 Varmint Air Rifle Break Barrel Spring Piston Air Rifle, .177 Caliber, available for inspection. Purchase invoice, bate stamped INV001.

65. Umarex 2251300 Surge Break Barrel Spring Piston Air Rifle, .177 Caliber, available for inspection. Purchase invoice, bate stamped INV002.

66. Medical and billing records from ███████████████, bate stamped LONG000001-26.

67. Affidavit of no records from ██████████, bate stamped LONG000027-28.

68. Pharmacy records from ████████, bate stamped LONG000029-41.

69. Medical records from █████████████, bate stamped LONG000042-320.

70. Medical records from ████████████, bate stamped LONG000321-345.

71. Medical and billing records from ████████████, bate stamped LONG000346-366.

72. Medical and billing records from ███████████████, bate stamped LONG000367-389.

6

73. Medical and billing records from ██████████████████████, bate stamped LONG000390-515.

74. Medical records from ████████████, bate stamped LONG000516-552.

75. Medical records from ██████████████, bate stamped LONG000553-566.

76. ███████████████ CV, bate stamped AG0001-4.

77. Stoeger X10 Break Barrel Air Rifle with 4x32mm scope, .177, Synthetic Stock, available for inspection. Purchase invoice, bate stamped INV003-4.

78. Ruger 2244030 Air Magnum Break Barrel Spring Piston Air Rifle, .177 Caliber, available for inspection. Purchase invoice, bate stamped INV005.

79. Gamo 6110072154 Whisper Silent Cat Break Barrel Spring Piston Air Rifle, .177 Caliber, available for inspection. Purchase invoice, bate stamped INV006.

80. Gamo Outdoor USA Press Release 11-13-08, bate stamped GM0044-45.

81. Gamo Outdoor USA Press Release 11-13-08, bate stamped GM0046-47.

82. Gamo Outdoor USA Press Release 4-19-10, bate stamped GM0048-49.

83. Gamo Outdoor USA Press Release 5-5-10, bate stamped GM0050-51.

84. Gamo Outdoor USA Press Release 7-6-10, bate stamped GM0052-53.

85. Gamo Outdoor USA Press Release 8-11-10, bate stamped GM0054-55.

86. Gamo Outdoor USA Press Release 11-19-10, bate stamped GM0056-57.

87. Gamo Outdoor USA Press Release 3-20-13, bate stamped GM0058-59.

88. Gamo Outdoor USA Press Release 5-4-13, bate stamped GM0060-61.

89. Gamo Outdoor USA Press Release 7-1-13, bate stamped GM0062-63.

90. Gamo Outdoor USA Press Release 7-18-13, bate stamped GM0064-65.

91. Gamo Outdoor USA Press Release 8-25-13, bate stamped GM0066-67.

92. Gamo Outdoor USA Press Release 9-22-13, bate stamped GM0068-69.

93. Gamo Outdoor USA Press Release 12-15-13, bate stamped GM0070-71.

94. Gamo Outdoor USA Press Release 1-8-14, bate stamped GM0072-73.

95. Keith Higginbotham interview from November 2017, Part One, bate stamped KH0001-7.

96. Keith Higginbotham interview from November 2017, Part Two, bate stamped KH0008-13.

97. Pyramyd Diana 350 Magnum .22 caliber Air Rifle, available for inspection. Purchase invoice, bate stamped INV007.

98. Hatsan Model 95 Combo Spring Piston Air Rifle .177 Caliber, available for inspection. Purchase invoice, bate stamped INV008-9.

99. "A chat with the President of Daisy, Gamo & BSA: Keith Higginbotham" by Airgun Hobbyist, bate stamped AIRGUN001-2.

100. AirForce International Cometa Fenix 400 Spring Piston Air Rifle .22 Caliber, available for inspection. Purchase invoice, bate stamped INV010.

101. AirForce International Model 95 Spring Piston Air Rifle .22 Caliber, available for inspection. Purchase invoice, bate stamped INV010.

102. Medical and billing records from ████████, bate stamped ████G001-37.

103. Straight Shooters Beeman R9 Spring Piston Air Rifle .22 Caliber, available for inspection. Purchase invoice, bate stamped INV011.

104. Straight Shooters Weihrauch HW50S Spring Piston Air Rifle .22 Caliber, available for inspection. Purchase invoice, bate stamped INV011.

105. Billing records from ████████████, bate stamped LONG000567-570.

106. Medical records from █████████████, bate stamped LONG000571-664.

107. Medical and billing records from ████████████████████, bate stamped  LONG 000665-3442, ████████ images on CD, and █████████████████, bate stamped LONG003443.

8

108. Umarex Walther Parrus Spring Piston Air Rifle .22 Caliber, available for inspection. Purchase invoice bate stamped INV012.

109. Gamo Big Cat 1200 .177 Cal. Break Barrel Air Rifle, available for inspection. Purchase invoice bate stamped INV013.

110. Video and pictures from May 15, 2020 CT scan: https://we.tl/t-Zrnma0hL6c

111. Zach Long's Lab results from June 18, 2020, bate stamped LABS001-2.

112. Gamo Photos of other brand guns with auto safety and other Gamo guns taken by Gamo on January 21, 2020, bate stamped GP0001-342.

113. Videos from August 7, 2020 showing various Gamo air rifles firing without touching the trigger (on USB flash drive).

114. Notice from Consumer Product Safety Commission "GAMO USA Corp. Recalls Air Rifles That Can Unexpectedly Fire, Posing Serious Injury Hazard", bate stamped CPSC001-2.

115. The following list of guns are identified as exhibits and available for inspection upon reasonable notice:

Beeman R2, .22cal, SN 12160851169

Gamo Varmint, .177cal, SN 04-1C-492064-19

Gamo Varmint, .177cal, SN 04-1C-492086-19

Gamo Varmint, .177cal, SN 04-1C-231100-20

Gamo Varmint , .177cal, SN 04-1C-231099-20

Gamo Varmint , .177cal, SN 04-1C-492085-19

Gamo Big Cat, .177cal, SN 04-1C-215400-07

Gamo Shadow Sport, .177cal, SN 04-1C-120495-07

Gamo Varmint, .177cal, SN 04-1C-746118-19

Gamo Shadow 1250, .177cal, SN 04-1C-090262-15

Gamo Hunter 440, .22cal, SN 04-1C-611965-20

116. Notice from Consumer Product Safety Commission "HatsanUSA Recalls Striker Air Rifles Due to Injury Hazard; Rifle Can Fire Unexpectedly", bate stamped CPSC003-5.

117. Notice from Consumer Product Safety Commission "Air Rifles Recalled by DIANA Can Unexpectedly Discharge; Risk of Serious Injury and Death", bate stamped CPSC006-9.

118. Notice from Consumer Product Safety Commission "CPSC, Crosman Corporation Announce Recall of Air Rifles", bate stamped CPSC010-11.

119. Notice from Consumer Product Safety Commission "Benjamin-Sheridan Corp. Recalls CO2 And Pneumatic Airguns", bate stamped CPSC012-13.

120. Notice from Consumer Product Safety Commission "Air Venturi Recalls Air Rifles That Can Unexpectedly Fire, Posing Serious Injury Hazard", bate stamped CPSC014-15.

121. Gamo USA website, gamousa.com, "About Us" page from 9-10-20, bate stamped GM0074.

122. Gamo S.L.U. website, gamo.com/en, "Our DNA" page from 9-10-20, bate stamped GM0075.

123. Gamo USA website, gamousa.com, "Iconic Brands" page from 9-10-20, bate stamped GM0076.

124. Gamo S.L.U. website, gamo.com/en, "Iconic Brands" page from 9-10-20, bate stamped GM0077.

125. Video link of Gamo DNA video on gamousa.com About Us web page: https://drive.google.com/file/d/1iK81SaZWat_PfQwSsXu_WpxnaBLmwBIb/view?usp=sharing.

126. Transcript of the audio portion of the video displayed on the gamousa.com website, "About Us" page, as of September 11, 2020, bate stamped GM0078-79.

10

127. Gamo Shadow DX schematics, with and without expanded part 35002-Z, bate stamped SHADOWDX001-2.

128. Internet links to Gamo sears and counter sears:

https://www.adeportes.es/gamo-repuestos/1744-trinquete-gatillo-35060.html

https://www.adeportes.es/gamo-repuestos/2252-contratrinquete-35070.html

https://www.adeportes.es/gamo-repuestos/1457-trinquete-gatillo-14020.html

https://www.adeportes.es/gamo-repuestos/2003-contra-trinquete-gatillo-14030.html

https://www.justoloquenecesito.es/repuestos-gamo/2624-trinquete-gatillo-rg35060.html

https://www.justoloquenecesito.es/repuestos-gamo/2696-contratrinquete-rg35070.html

https://www.justoloquenecesito.es/repuestos-gamo/2583-trinquete-gatillo-rg14020.html

https://www.justoloquenecesito.es/buscar?controller=search&orderby=position&orderway=desc&search_query=14030&submit_search=

129. William Wolfs Curriculum Vitae, bate stamped WOLFS0001.

130. William Wolfs Report, bate stamped WOLFS0002-4.

131. Wolfs Testing Data, bate stamped WOLFS0005-30.

132. Wolfs Raw Data, bate stamped WOLFS0031-116.

133. Photographs and Video recordings from Wolfs testing June 11, 2020, to be provided to Gamo on a flash drive.

134. Joshua Harrison CV, bate stamped HARRISON0001-6.

135. Harrison notes from August 6, 2020 Shadow Sport inspection, bate stamped HARRISON0007-24.

136. Harrison notes from August 7, 2020 test firing without pulling the trigger, bate stamped HARRISON0025-41.

137. Video from August 7, 2020 test firing:

https://drive.google.com/file/d/1B24ZjZ-4OCUx2KbvrakpI_u54W6b9eRT/view?usp=sharing

11

138. Video summary from 8-7-20 Test firing:

https://drive.google.com/file/d/18y39IhpPzDIzK8YS_vT2jYxF5BmuQ1vq/view?usp=sharing

139. August 6, 2020 video shot by Gamo expert Derek Watkins that shows Gamo Shadow Sport 04-1C-365162-09 repeatedly firing without touching the trigger:

https://drive.google.com/file/d/1lz7eruivsXAFBJXZcmA1f2HUAJ0Zc7fp/view?usp=sharing

140. Videos recorded by Scott Pilkington from August 6, 2020 gun inspection, to be provided on CD.

141. Videos and photographs from May 15, 2020 CT scan, to be provided on CD. Photographs are bate stamped CT0001-5.

142. Photographs from September 17, 2020 CT scan, bate stamped CT0006-22, to be provided on CD.

143. Gamo trigger mechanism, part number 34845, and pictures of this trigger mechanism, part number 34845, bate stamped TM0001-7.

144. Zach Long's lab results from ██████████, bate stamped LABS003-010.

145. Link to the August 6, 2020 test video:

https://drive.google.com/file/d/1GwRYdK2XcbjJWftrgS8rntn1EhGJ-qRQ/view?usp=sharing

146. Medical and billing records from ██████████, bate stamped ██0001-76.

147. Declaration of Defendant Donny Chalmers, bate stamped DC001-2.

148. Documents showing purchase of Gamo Varmint and Gamo Wildcat Whisper, bate stamped INV014-18.

149. Pictures of end panels of two new Gamo rifles, bate stamped GR001-2.

150. October 16, 2020 video of Slocum opening and testing two new Gamo rifles:

https://drive.google.com/file/d/1Luw-hc5TOoR8bePT3b8iobHCHkv7NaSM/view

151. August 26, 2020 video of Neal testing various Gamo air rifles:

12

https://drive.google.com/file/d/1vygpNyA9bqdORPYo3lnU5PE3hv0elbwJ/view

152. August 10, 2004 Yellow Airgun Forum Archive, bate stamped YAF001-22:

https://www.tapatalk.com/groups/yellow/a-very-interesting-i-e-scary-as-hell-fact-about-ga-t62051.html?sid=c6e634bab65647a357fa08edeec5a9b9

https://www.tapatalk.com/groups/yellow/a-very-interesting-i-e-scary-as-hell-fact-about-ga-t62051-s10.html

https://www.tapatalk.com/groups/yellow/a-very-interesting-i-e-scary-as-hell-fact-about-ga-t62051-s20.html

153. March 28, 2006 MK-II-GTX Trigger, bate stamped MK-II-GTX001-8:

https://web.archive.org/web/20060328021840/http://charliedatuna.com/MKIIGTXTrigger.htm

154. GRT-III Trigger, bate stamped GRT III-001-4:

https://www.charliedatuna.com/pdfs/GRT-III%20trigger%20blade%20instructions.pdf

155. July 10, 2013 GRT-4G Trigger, bate stamped GRT 4G-001-11:

https://www.charliedatuna.com/airgun_docs/GRT%204-G%20install%20NEW.pdf

156. September 19, 2011 Balk Firing, bate stamped GTA001-11:

https://www.gatewaytoairguns.org/GTA/index.php?topic=18419.0

157. October 10, 2010 Sear won't reset, bate stamped GTA012-17:

https://www.gatewaytoairguns.org/GTA/index.php?topic=3321.msg26699#msg26699

158. Picture of the identifying information contained on the end panel of the box of Big Cat 1200 SN: 04-1C-224058-09, bate stamped BCBOX001.

159. Deposition transcripts regarding the allegations in the Picquet v. Gamo case, bate stamped PICQ-D-0001-308.

160. Photographs supporting the allegations in the Picquet v. Gamo case, bate stamped PICQ-P-0001-16.

161. Expert reports regarding the allegations in the Picquet v. Gamo case, bate stamped PICQ-E-0001-36.

162. Police report regarding the allegations in the Picquet v. Gamo case, bate stamped PICQ-PR-0001-4.

163. May 22, 2021 null region testing with finger video:

https://www.dropbox.com/sh/a1sxahgb2eyg816/AABFMRZCpZ_cUbdr3lK0eEoia?dl=0&preview=Null+Region+Test+w+Finger+New+Shadow+640+Rifle.MP4

164. ASTM Standard Consumer Safety Specification for Non-Powder Guns, bate stamped ASTM0001-11.

165. Video of Gamo Big Cat null region testing September 7, 2021, and Report of Douglas White, bate stamped DW001-5:

https://drive.google.com/drive/folders/1HUwXT-W53JtawY70RFkqIMzyw_WbF6nK?usp=sharing

166. Video of Gamo Shadow Sport, 04-1C-365162-09, null region testing September 9, 2021, and Report of Douglas White, bate stamped DW006-10:

https://drive.google.com/drive/folders/1lEH3GHrcuit6BpOFMbT9CScdTSfLdMv5?usp=sharing

167. Video of brand new Gamo Varmint null region testing, and Report of Douglas White, bate stamped DW011-12:

https://drive.google.com/drive/folders/1Iyjp4bjdw13nekfjvifydh8tfWeFoEl6?usp=sharing

168. Medical and billing records from █████████, bate stamped ██████038-52.

169. Medical records from ████████████████████████████, bate stamped ██████0210-433 and billing records, bate stamped ██████0008-27.

170. Medical and billing records from ████████████████, bate stamped ██████001-12.

14

171. "GAMO Outdoor acquires Daisy" by GUNSweek.com, bate stamped GWEEK001-3:

https://www.gunsweek.com/en/gun-industry/news/gamo-outdoor-acquires-daisy

172. "BRS Acquires Daisy Outdoor Products", news provided by Bruckmann, Rosser, Sherrill & Co., bate stamped BRSC001-3:

https://www.prnewswire.com/news-releases/brs-acquires-daisy-outdoor-products-300294682.html

173. "New York Firm acquires Arkansas-based Daisy Outdoor Products" by Arkansas Democrat Gazette, bate stamped ADG001-3:

https://www.arkansasonline.com/news/2016/jul/06/new-york-firm-acquires-arkansas-based-daisy-outdoo/

174. Medical records from ███████████████, bate stamped ███001-4.

175. **Medical records from ████████████, bate stamped ███005-8.**

Plaintiff reserves the right to supplement this list of documents as discovery continues. Plaintiff further reserves the right to identify any and all documents identified by Defendants.

## II.   WITNESSES

1. Aura Truelove
   c/o Murdock & Associates, Chtd.
   521 S. Third Street
   Las Vegas, Nevada 89101

Mrs. Truelove is Zachary Long's natural mother and is expected to testify regarding her knowledge of the facts and circumstances surrounding the events alleged in the Complaint and the damages allegedly sustained as a result thereof.

2. Justin Truelove
   c/o Murdock & Associates, Chtd.
   521 S. Third Street
   Las Vegas, Nevada 89101

15

Mr. Truelove is Zachary Long's step-father and is expected to testify regarding his knowledge of the facts and circumstances surrounding the events alleged in the Complaint and the damages allegedly sustained as a result thereof.

3.  Robert Ramirez
c/o Bremer Whyte Brown & O'Meara LLP
1160 N. Town Center Drive, Suite 250
Las Vegas, NV 89144

Robert Ramirez is defendant herein and is expected to testify regarding his knowledge of the facts and circumstances surrounding the events alleged in the Complaint and the damages allegedly sustained as a result thereof.

4.  Roberto Ramirez
c/o Bremer Whyte Brown & O'Meara LLP
1160 N. Town Center Drive, Suite 250
Las Vegas, NV 89144

Roberto Ramirez is defendant herein and is expected to testify regarding his knowledge of the facts and circumstances surrounding the events alleged in the Complaint and the damages allegedly sustained as a result thereof.

5.  Donny Chalmers
7632 Spruce Run Ct.
Las Vegas, NV 89128

Donny Chalmers is defendant herein and is expected to testify regarding his knowledge of the facts and circumstances surrounding the events alleged in the Complaint and the damages allegedly sustained as a result thereof.

6.  Brandon Chalmers
7632 Spruce Run Ct.
Las Vegas, NV 89128

Brandon Chalmers is expected to testify regarding his knowledge of the facts and circumstances surrounding the events alleged in the Complaint and the damages allegedly sustained as a result thereof.

16

1
2

7.  Donald R. Chalmers, IV
    7632 Spruce Run Ct.
    Las Vegas, NV 89128

3
4

Donald R. Chalmers, IV is expected to testify regarding his knowledge of the facts and

5

circumstances surrounding the events alleged in the Complaint and the damages allegedly

6

sustained as a result thereof.

7

8.  Ruby Chalmers
    7632 Spruce Run Ct.
    Las Vegas, NV 89128

8
9

Ruby Chalmers is expected to testify regarding her knowledge of the facts and

10

circumstances surrounding the events alleged in the Complaint and the damages allegedly

11
12

sustained as a result thereof.

13

9.  Person(s) Most Knowledgeable for Gamo Outdoor USA Inc.
    c/o Loren S. Young, Esq.
    Lincoln, Gustafson & Cercos, LLP
    3960 Howard Hughes Parkway, Suite 200
    Las Vegas, Nevada 89169
    And
    Ryan L. Erdreich, Esq. (Pro Hac Vice)
    Pisciotti Lallis Erdreich Counselors & Litigators
    30 Columbia Turnpike, Suite 205
    Florham Park, NJ 07932

14
15
16
17
18
19
20

Gamo Outdoor USA, Inc. is Defendant herein and the Person Most Knowledgeable is

21

expected to testify regarding his/her knowledge of the facts and circumstances surrounding the

22

events alleged in the Complaint, the damages allegedly sustained as a result thereof, the air gun

23
24

subject of Plaintiff's Complaint, including manufacturing, testing, design, product warnings and

25

advertising.

26

10.  

27
28

17

 is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

11. Person(s) Most Knowledgeable/Custodian of Records of

Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

12. Person(s) Most Knowledgeable/Custodian of Records of
LVMPD Records and Fingerprint Bureau
400 S. Martin L. King Blvd.
Las Vegas, NV 89106

Such person(s) is(are) expected to testify regarding his/her knowledge of event number 160416-0364, as it pertains to the facts and circumstances of the subject incident(s) and the authenticity of records, provided by LVMPD.

13. 

is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

14. Person(s) Most Knowledgeable/Custodian of Records of

18

Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

15. 

█████████ is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

16. 

█████████ is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

17. 

█████████ is a treating physician of Zachary and will testify in accordance with her medical records regarding Plaintiff and Plaintiff's injuries. Specifically, █████████ will testify about when she first encountered Zachary at █████ and also as she followed him thereafter continuing to the present. █████████ will testify that as a proximate result of the gunshot into his head, Zachary has Panhypopituitarism which involves growth hormone deficiency, gonadotropin deficiency, ACTH deficiency, and ADH deficiency. She will explain each issue and how that relates to various issues within the human body and specifically Zack's body and body functions

and related deficiencies. She will testify about the medications he was on in the past as well as the medications which he is currently on in order to aid the medical issues associated with his Panhypopituitarism. She will testify as to what medications she believes he will need to take in the future as well as issues that he will have to a reasonable degree of medical certainty. ███████ will testify that all of her opinions regarding Zachary's diagnosis, past, present and future treatment were all formed during medical treatment of Zachary. She will also testify that all of her treatment was reasonable and necessary. Finally, ███████ will testify about her background and training as indicated on her CV which is disclosed herein.

18. 

███████ is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

19. 

███████ is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

20. Person(s) Most Knowledgeable/Custodian of Records of ███████████████████████

Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

21. Person(s) Most Knowledgeable/Custodian of Records of



Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

22. Person(s) Most Knowledgeable/Custodian of Records of



Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

23. Person(s) Most Knowledgeable/Custodian of Records of



Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

24. Person(s) Most Knowledgeable/Custodian of Records of



21

Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

25. Person(s) Most Knowledgeable/Custodian of Records of



Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

26. Person(s) Most Knowledgeable/Custodian of Records of



Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

27. Person(s) Most Knowledgeable/Custodian of Records of



Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

28. 

█████████ will testify about the care and treatment she provided to Zachary Long, the consultations she requested and/or reviewed regarding Zachary Long, that all of the treatment that she provided to Zachary Long and/or that she obtained consults for or was involved in in any way, was reasonable and necessary.

29. Keith Higginbotham
c/o Loren S. Young, Esq.
Lincoln, Gustafson & Cercos, LLP
3960 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
and
Ryan L. Erdreich, Esq. (Pro Hac Vice)
Pisciotti Lallis Erdreich Counselors & Litigators
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932

Keith Higginbotham is the President of GAMO and is expected to testify regarding his knowledge of the facts and circumstances surrounding the events alleged in the Complaint, the damages allegedly sustained as a result thereof, the air gun subject of Plaintiff's Complaint, including manufacturing, testing, design, product warnings and advertising.

30. Person(s) Most Knowledgeable/Custodian of Records of
████████████████

Such person(s) is(are) expected to testify regarding his/her knowledge of the medical services provided to Zachary Long as they pertain to the facts and circumstances of the subject incident(s) and the authenticity of the medical/billing records.

31. ██████████

██████████ will testify regarding his observations and video of the ██ imaging on May 15, 2020.

/

23

32. Farrell Davis
   4938 Robin Hood Drive
   New Orleans, LA 70128

   Farrell Davis will testify to circumstances and events regarding the allegations in the Picquet v. Gamo case.

33. Damico Davis
   4938 Robin Hood Drive
   New Orleans, LA 70128

   Damico Davis will testify to circumstances and events regarding the allegations in the Picquet v. Gamo case.

34. Rashaad Picquet
   15330 Liberty River Drive, No. 7106
   Houston, Texas 77048

   Rashaad Picquet will testify to circumstances and events regarding the allegations in the Picquet v. Gamo case.

35. Shantel Harris
   15330 Liberty River Drive, No. 7106
   Houston, Texas 77048

   Shantel Harris will testify to circumstances and events regarding the allegations in the Picquet v. Gamo case.

36. ███████████████
    ████████████████

   ████████ is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident.

37. Stephen Sherrill
   c/o Bruckmann Rosser Sherrill & Co LLC
   126 East 56th Street, 29th Floor
   New York, NY, 10022

24

Mr. Sherrill will testify regarding Gamo's products and its targeting of youth markets.

38. 

is a treating physician of Plaintiff and is expected to testify regarding the medical services, provided to Zachary Long as they pertain to the facts and circumstances of the subject incident including but not limited to his examination of Zachary Long and his findings which included Glaucoma which is as a result of the damages sustained via the gunshot and related trauma. **He will also testify that Zachary has open angle glaucoma which was caused by the incident. He will further testify that Zachary will need to now begin latanoprost eye drops daily for the rest of his life. Zachary will be following up in 4 weeks from today to check intraocular pressure and to monitor and try to preserve vision.**

Plaintiff reserves the right to supplement this list of witnesses and documents as discovery continues. Plaintiff further reserves the right to call any witness identified by Defendants or use any document identified by Defendants. Plaintiff reserves the right to designate expert witnesses on liability and damages.

### III.    COMPUTATION OF DAMAGES

1. General Damages:                                          To be determined

2. Special Damages:

   A.  Medical Costs:

| Doctor/Facility | Dates | Amounts Charged |
|---|---|---|
|  | 4/16/16-6/24/17 | $568,078.31 |
|  | 4/16/16-9/15/16 | $43,865.00 |

25

| | | |
|---|---|---|
| | 4/16/16-05/01/17 | $4,603.00 |
| | 9/11/17-3/7/19 | $1,378.00 |
| | 8/5/19-3/18/21 | $1,615.00 |
| | 4/29/16-1/12/2017 | $1,200.00 |
| | 7/5/2017 | $260 |
| | 12/28/2016 | $512 |
| | 12/20/2016 | $281 |
| | 4/16/2016 | $3,170.00 |
| | 4/16/16-10/21/19 | $268,197.95 |
| | 4/16/16-7/27/2016 | $3,606.29 |
| | 12/20/19-5/18/21 | $7,735.74 |
| | 6/22/2021 | $336.00 |

|  |  |  |
|---|---|---|
| █████████ | | |

Medical Costs Total (as of 6/22/2021): $904,838.29

Future medical expenses:

(1) Zach will have Panhypopituitarism for the rest of his life. This involves growth hormone deficiency, gonadotropin deficiency, ACTH deficiency, and ADH deficiency and each will require medications for the rest of his life. The treatment for same is discussed at length in the deposition of ███████████ For the rest of his life, Zach will require seeing an endocrinologist, having visits with Registered Nurses, Bone studies (until age 21), laboratory expenses, and prescription medications. Plaintiffs will present expert testimony regarding the costs of the treatment for same from $674,071 to $700,695.

(2) Plaintiff will present expert testimony regarding potential paternity. The expert will testify that because Zach had more likely than not, not entered spermarche the restoration of sperm production is less predictable and less successful. It is more likely than not that Zach will not be able to achieve paternity. However, the options for attempting to achieve paternity are:

> Goal:  stimulate spermatogenesis with replacement pituitary hormones.
> Average Duration required: 36-52 weeks.
> Medications:  HMG (Repronex) 75-150 IU 2x/week with HCG (Pregnyl) 2-3000IU 3x/wk
> Cost:  HMG $200-400/wk:     $10,000-20,000/yr
> Cost:  HCG  $350/wk:          $18,200/yr
>
> #1:  If sperm counts stimulate to normal fertility levels, natural conceptions can occur at: $0 added cost.
>
> If, however, sub-fertile sperm counts are generated, depending level of sperm production assisted reproductive technologies can be applied in addition to above medication cost generating "possible outcomes 2-6". Note; how many cycles of IUI or IVF needed to achieve a pregnancy are highly variable but can add significant cost and are rarely covered by insurance. Most couples entering IVF require 3 cycles for a viable pregnancy.

27

<u>Possible outcome #2:</u> For sub-fertile sperm counts 2-5 million add to cost of spermache induction:  Intra-uterine Insemination (IUI)
*Cost:  $1000/cycle with 15% pregnancy rate/cycle.  Total cost determined on how* many cycles of IUI to achieve pregnancy.

<u>Possible outcome #3:</u> Sub-fertile sperm counts less 1 million or unsuccessful IUI attempts: add to cost of spermache induction medications:  IVF/ICSI with 40% pregnancy rate/cycle. *Cost:  $12,000/cycle.*  (Average of 3 cycles required for successful pregnancy, but highly variable)

<u>Possible outcome #4:</u> No sperm seen with stimulation.
Testicular mapping and if sperm found used in conjunction with IVF/ICSI
Cost: *Mapping $8,000 one time and IVF/ICSI  $12,000/cycle*

No sperm on mapping options:

> <u>Possible outcome #5:</u>  Donor sperm.  This would be attempted if hormonal stimulation was unsuccessful and/or mapping did not reveal sperm production.
> Cost:  *$1000/vial used in conjunction with IUI at $1000/cycle*

> <u>Possible outcome #6:</u>  Adoption:  *Average US agency cost:  $43,000.*

(3) The lead pellet is still lodged behind Zach's eye. His future damage may include complications associated therewith including but not limited to lead poisoning (Symptoms of lead toxicity are often nonspecific and can appear years after the initial injury, but include hypertension, kidney dysfunction, possible subclinical neurocognitive deficits), including vision impairment (because of the location of the pellet), and the possible removal of the pellet, with associated costs and expenses, and Plaintiffs will present expert testimony in accordance with the Nevada Rules of Civil Procedure and the aforementioned costs will be supplemented herein.[1]

**(4) Latanoprost Eye Drops:  Cost Unknown at this time.**

**(5)  Frequent Ophthalmology Checkups: Cost Unknown at this time.**

*//*

*//*

---

[1] Zach is scheduled for a baseline lead blood level. However, because of his serious medical issues, he is staying away from doctor's offices and labs as much as possible, because of the Covid-19 pandemic.

28

B.  Out of Pocket Expenses:

Medical:

| | |
|---|---|
| ■■■■■■■■ | $1,045.48 |
| ■■■■■■■■ | $1,268.00 |
| ■■■■■■■■■■ | $1,264.16 |
| ■■■■■■■■■■ | $40.00 |
| ■■■■■■ | $51.86 |
| ■■■■■■■■■■■■ | $88.31 |
| ■■■■■ | $31.00 |
| ■■■■■■■■■ | $1,979.00 |
| ■■■■ | $78.27 |
| ■■■■■■■■■■■ | $1,575.00 |
| ■■■■■■■■ | $1,385.58 |

Co-pay for specialist:                          $40 per visit

Co-pay for lab:                                    $20 per visit

Co-pay for medicines:                          $50 per month

Non-medical:

Meals during hospitalization:              $3,120.00

Travel:                                             To be determined

Out of Pocket Expenses Total: To be determined

//

//

//

//

29

C.  Economic Loss:                                         To be determined

D.  Attorney's Fees:                                    To be determined

E.  Cost of Litigation:                              To be determined

F.  Interest:                                                 To be determined

DATED this 21st day of April, 2022.

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.

/s/ Robert E. Murdock
Robert E. Murdock    Bar No. 4013
Eckley M. Keach      Bar No. 1154
521 South Third Street
Las Vegas, NV  89101
Attorneys for Plaintiff

30

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of April, 2022, I served a copy of the foregoing Plaintiff's Sixty-First Supplement to Early Case Conference List of Witnesses and Production of Documents upon the parties to this action via the court's mandatory electronic service, addressed as follows:

Loren S. Young, Esq.
Lincoln, Gustafson & Cercos, LLP
3960 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

Ryan L. Erdreich, Esq. (*Pro Hac Vice*)
Pisciotti Lallis Erdreich Counselors & Litigators
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
*Attorneys for Defendant Gamo Outdoor USA, Inc.*

**By US Mail:**
Donald R. Chalmers V
2644 Starfish Court
Las Vegas, NV 89128
*Defendant Pro Se*

/s/ Vera A. Minkova
An employee of Murdock & Associates, Chtd.

31