**LOREN S. YOUNG, ESQ.**
Nevada Bar No. 7567
lyoung@lgclawoffice.com
**LINCOLN, GUSTAFSON & CERCOS, LLP**
3960 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:    (707) 257-1997
Facsimile:    (702) 257-2203

*Attorneys for Defendant Gamo Outdoor S.L.U.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ZACHARY LONG, individually, | |
| Plaintiff, | Case No.  2:22-cv-00670-JAD-DJA |
| v. | |
| GAMO   OUTDOOR   S.L.U.,   a   Spanish Corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, | **DEFENDANT GAMO OUTDOOR S.L.U. S.A.'S MOTION TO DISMISS THE COMPLAINT** |
| Defendants. | |

Defendant Gamo Outdoor S.L.U. ("Gamo Spain") respectfully moves to dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(2), Rule 12(b)(5) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in support thereof, submits the within Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF ARGUMENT

Defendant Gamo Spain is a foreign manufacturer of air guns and other air gun components with a principal place of business in Spain.  Simply, Gamo Spain should be dismissed for lack of personal jurisdiction because there is no basis for either general or personal jurisdiction.  In this regard, Gamo Spain is neither incorporated nor has a principal place of business in the State of Nevada  *and* Gamo Spain has no contacts with Nevada from which this lawsuit arises.

1
2
3
4
5
6
7
8

Even beyond the lack of personal jurisdiction, Plaintiff's claims are otherwise subject to dismissal on equitable grounds.  Specifically, Plaintiff previously filed a lawsuit in state court against Gamo Spain, which was dismissed for failure to attempt service under Nevada Rules of Civil Procedure 4(e) for nearly two and a half years (or 900 days).  Plaintiff is now attempting to cure this defect by filing this new action against Gamo Spain.  However, this lawsuit should be barred Nevada's two-year statute of limitation for this personal injury claim which expired on August 16, 2018, as well as other equitable reasons.  As will be demonstrated, Plaintiff's Complaint should be dismissed.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

This lawsuit arises out of an incident on when Plaintiff – who was a minor at the time – was injured while his teenage friends were handling an air rifle.  On December 20, 2016, Plaintiff, Zachary Long, who was a minor at the time, filed a complaint (through his mother Aura Truelove)  in the District Court of Clark County, Nevada.  (*See* Ex. A, Original State Court Complaint.)[1]  Plaintiff named the owner of the air rifle (Robert Ramirez) and the kids utilizing the air rifle (Roberto Ramirez and Donny Chalmers) as defendants and brought claims sounding in negligence.  On August 16, 2017, Plaintiff filed a First Amended Complaint naming Gamo Outdoor USA, Inc. ("Gamo USA") and Gamo Spain as additional Defendants.  (*See* Ex. B, Original Amended Complaint.)[2]  The First Amended Complaint, stems from the same incident as the present matter and asserts products liability claims for manufacturing defects, design defects, and failure to warn against both Gamo USA and Gamo Spain.  (*Id.* at ¶¶11-20 and 32-36.)  Plaintiff served a copy of the First Amended Complaint on Gamo USA but never served a copy of the First Amended Complaint on Gamo Spain.

///

27
28

[1] This original lawsuit has not been tried and is still pending under docket number A-16-748401-C.  Gamo Spain specifically reserves the defenses of issue and claim preclusion (res judicata), as this incident is currently being litigated in state court against Gamo USA based on the same theories of liability asserted in this case.

[2] The Amended Complaint named "INDUSTRIAS EL GAMO, S.A." as one of the Defendants which is the prior corporate name of Gamo Spain. (*See* Ex. C, State Court Declaration.)

On or about January 30, 2020, the District Court of Clark County, Nevada dismissed Gamo Spain from the action due to Plaintiff's failure to attempt service of process or to show good cause for an extension of time for service under Nevada Rules of Civil Procedure 4(e)(1).  (*See* Ex. D, January 29, 2020 Order.)[3]  The dismissal was upheld by the Nevada Court of Appeals.

While the appellate issue was pending, Plaintiff filed the present action solely against Gamo Spain in the District Court of Clark County, Nevada.  (*See* Ex. E, Complaint.)  Gamo Spain was served with the Complaint via registered mail eight months later, on March 24, 2022.  (*Ibid*.)  Plaintiff now reasserts the same negligence and strict product liability claims against Gamo Spain that were originally brought in the state court action.  (*Id.* ¶¶ 77-104.)  Plaintiff alleges that Defendant manufactured and distributed a Gamo Shadow Sport .177 caliber pellet air rifle (the "air rifle"), which Robert Ramirez, the father of Plaintiff's friend, purchased sometime prior to August 2016.  (*Id.* ¶¶ 18, 21-22.)  On August 16, 2016, at a sleepover at Robert Ramirez's home, Plaintiff alleges that he was struck behind his eye by a pellet when a friend, Donny Chalmers, was handling and fired the air rifle.  (*Id.* ¶¶ 20, 27, 63.)  The pellet allegedly struck Plaintiff "in the temple, penetrated his skull, and became lodged in his brain behind his eye."  (*Id.* ¶ 65.)

On April 22, 2022, Gamo Spain filed a notice of removal from the District Court of Clark County, Nevada to the United States District Court for the District of Nevada based on the diversity jurisdiction.  (*See* Dkt. No. 1.)

///

///

---

[3] The Court may take judicial notice of the pleadings and orders in the state court action. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir.1996) (court may take judicial notice of pleadings and court orders in related proceedings); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) (a court may take judicial notice "of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   GAMO SPAIN

Gamo Spain is a Spanish corporation locate in Barcelona, Spain.  (Ex. F, Francisco Javier Méndez Rodríguez Declaration at ¶ 7.)  It is a manufacturer of air guns, components, accessories and other products.  (*Id.* at ¶ 6.)  Gamo Spain does not have any offices, facilities, agents, or employees in the State of Nevada, is not registered in Nevada, and does not keep any of its business records in Nevada. (*Id.* at ¶¶ 8-12.)  Gamo Spain does not conduct advertising or promotional activities in Nevada or targeted to the Nevada market.  (*Id.* at ¶ 13.)  Gamo Spain relinquishes all control over its products after they are shipped to independent distributors and it has no knowledge of, or control over, the ultimate destination of the products.  (*Id.* at ¶¶ 15-16, 18-23.)  Gamo Spain has never sold its products directly to any individual customers, consumers or retail sellers in Nevada.  (*Id.* at ¶ 14.)  Gamo Spain and Gamo USA are independent legal companies. (*Id.* at ¶ 17.)

### IV.   DISTRIBUTION OF SUBJECT AIR RIFLE

The subject air rifle was manufactured by Gamo Spain on or about February 6, 2009 and sold to Gamo USA on or about February 26, 2018.  (*Id.* at ¶ 25.)  Possession and title to the air rifle was transferred to Gamo USA in Spain. (*Id.* at  ¶ 22.)  It is alleged that the air rifle was purchased by Robert and/or Roberto Ramirez in Nevada and was in their home on the night of the incident. (*See* Ex. E, at ¶ ¶18-22.)

### V.   LEGAL STANDARD

#### a.   Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations would establish a prima facie case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). As recognized by this Court, "allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 2016 WL 7018524, at *1 (D. Nev. Nov. 29,

2016).

### b.  <u>Rule 12 (b)(5)</u>

A motion pursuant to Federal Rule of Civil Procedure 12(b)(5) is the appropriate means for challenging the sufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(5). The plaintiff has the burden of demonstrating that service of process was valid. *See R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1102 (D. Nev. 1996). If service of process is insufficient, the court has discretion to dismiss an action or to simply quash service. *See SHJ v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). Actual notice of a lawsuit will not subject a defendant to personal jurisdiction "if service was not made in substantial compliance with Rule 4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (quotation omitted). "[T]the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984).

### c.  <u>Rule 12(b)(6)</u>

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "facts" that are sufficient to "nudge the[] claims across the line from conceivable to plausible." *Id*. at 570. Doing so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. In *Ashcroft v. Iqbal*, the Supreme Court reaffirmed the ruling in *Twombly* that only a complaint stating a "plausible" claim for relief will survive a motion to dismiss. 556 U.S. 662, 679 (2009).

The Supreme Court prescribed a "two-pronged" approach which should be employed by the lower courts in evaluating the sufficiency of allegations under Rule 12(b)(6). *Iqbal*, 556 U.S at 679. First, a lower court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Under this standard, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 555). "[M]ere conclusory statements . . . do not suffice." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

## VI.   ARGUMENT

### A.   Plaintiff's Claims Should be Dismissed under Rule 12(b)(5) for Insufficient Service of Process on Gamo Spain pursuant to the Nevada Rules of Civil Procedure.

Plaintiff's claims against Gamo Spain should be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(5) for failure to timely effectuate service on Gamo Spain in accordance with the Nevada Rules of Civil Procedure ("NRCP"). NRCP 4(e) provides, in pertinent part:

> (1) **In General.** The summons and complaint must be served upon a defendant no later than 120 days after the complaint is filed, unless the court grants an extension of time under this rule.
>
> (2) **Dismissal.** If service of the summons and complaint is not made upon a defendant before the 120-day service period — or any extension thereof — expires, the court must dismiss the action, without prejudice, as to that defendant upon motion or upon the court's own order to show cause.

NRCP 4(e)(2) states that the court **must** dismiss the action as to a defendant who is not served within 120 days after the complaint is filed. The only exception to this rule is when a plaintiff files a motion for an extension of time and makes a showing that good cause exists for granting an extension of the service period. NRCP 4(e)(3). Courts will generally enforce the timeliness provisions written into the rules "in order to promote the timely and efficient processing of cases." *Dougan v. Gustaveson*, 108 Nev. 517, 835 P.2d 795 (1992). Notice, actual or otherwise, is not a substitute for service of process. *C.H.A. Venture v. G.C. Wallace Consulting Engineers, Inc.*, 106 Nev. 381, 384 (1990). When a case is removed from state court to federal court, the question whether service of process was

sufficient prior to removal is governed by **state law**. *See Lee v. City of Beaumont*, 12 F.3d 933, 936–37 (9th Cir. 1993).

Since Plaintiff did not serve Gamo Spain within 120 days of the filing of the Complaint, this lawsuit should be dismissed.  Plaintiff filed his Complaint against Gamo Spain on July 13, 2021.  Pursuant to NRCP 4(e), the deadline to serve Gamo Spain with the Complaint would have been November 10, 2021.  However, Plaintiff failed to meet this deadline and served Gamo Spain via registered mail on March 24, 2022, nearly a year after the Complaint was filed.  Moreover, Plaintiff never filed a motion for an extension of time to effectuate service on Gamo Spain, and certain has no good cause for failing to timely serve Gamo Spain.  Because Gamo Spain was not served within 120 days of the filing of the Complaint, Gamo Spain must be dismissed as a defendant under FRCP 12(b)(5) based on the requirements of NRCP 4(e)(2).

**B.  Plaintiff's Claims Against Gamo Spain Should be Dismissed under Rule 12(b)(2) for Lack of Personal Jurisdiction.**

Plaintiff's Claims against Gamo Spain should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  "'When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.'"  *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1130–41 (D. Nev. 2009) (citing *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir.2006)).  "To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process."  *Id.*  "The Court must analyze whether personal jurisdiction exists over each defendant separately."  *Id.* (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1130 (9th Cir.2003)).

///

///

1. **Plaintiff's Claims Against Gamo Spain Must be Dismissed for Lack of Personal Jurisdiction.**

Pursuant to Nev. Rev. Stat. § 14.065, Nevada's long-arm statute, "[a] court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States."  Thus, an analysis of due process pursuant to United States Supreme Court precedent is required.

"The canonical opinion in this area remains *International Shoe* . . .  in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of suit does not offend traditional notions of fair play and substantial justice.'"  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).  In its holding, the Supreme Court presaged the development of two categories of jurisdiction: general and specific jurisdiction.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

General jurisdiction provides adjudicative authority "in instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of actions arising from dealings entirely distinct from those activities."  *Int'l Shoe*, 326 U.S. at 318.  General jurisdiction requires "affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.,* comparable to a domestic enterprise in that State."  *Daimler*, 134 S. Ct. at 758, n.11 (citations, internal quotation marks and alterations omitted).  The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business.  *Id*. at 760; *Ranza v. Nike*, 793 F.3d 1059, 1074 (9th Cir. 2015).  "Only in an exceptional case will general jurisdiction be available anywhere else."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir.2014).

Under specific jurisdiction, "jurisdiction unquestionably could be asserted where an out-of-state corporation's in-state activity is 'continuous and systematic' and that activity gave rise to the

episode-in-suit." *Goodyear*, 564 U.S. at 923.  Acts unrelated to the forum connections and insufficient to "render a corporation answerable in that State."  *Ibid*.  In examining whether specific jurisdiction exists, the relationship to be examined is that between the defendant and the forum state, and that relationship must arise out of the defendant's own contacts "with the forum state itself, not . . . with persons who reside there."  *Castleman v. Crowley,* 321CV00523MMDVPC, 2022 WL 980535, at *2 (D. Nev. Mar. 31, 2022) (citing *Walden v. Fiore,* 571 U.S. 277, 284-85 (2014)).

###### a.  <u>This Court Lacks General Jurisdiction over Defendant Gamo Spain.</u>

For a Court to have adjudicatory authority over a foreign defendant based upon general jurisdiction, it must be shown that the defendant's affiliations and activities within the forum state are "so 'continuous and systematic' as to render them essentially at home in the forum state."  *Goodyear,* 564 U.S. at 919; *see also Daimler*, 134 S. Ct. at 751.  "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'"  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (citing *King v. Am. Family Mut. Ins. Co.,* 632 F.3d 570, 579 (9th Cir.2011) (quoting *International Shoe, 326 U.S. at 318, 66 S.Ct. 154))).  When determining whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, the court considers their "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets."  *Id.* (citing *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th Cir.2006)).

With respect to a corporation, the place of incorporation and principal place of business are "paradigm . . . bases for general jurisdiction."  *Daimler*, 134 S. Ct. at 761.  The *Daimler* Court reasoned that these bases afford plaintiffs recourse to at least one certain forum in which a corporate defendant may be sued on any and all claims.  *Ibid*.  Finding general jurisdiction over a corporate defendant that is not incorporated or does not have its principal place of business in the forum would be an "exception case."  *Ibid.*

Here, Gamo Spain does not have any contacts in Nevada and is not at home in Nevada.  Gamo Spain is a foreign company whose physical premises and employees are located exclusively in Spain.  (*See* Ex. F, Francisco Javier Méndez Rodríguez Declaration at ¶¶ 7, 8, 10).  It has never been incorporated or registered in Nevada, and Gamo Spain does not maintain a headquarters, factory or office in the United States.  (*Id.* at ¶ 8).  Indeed, Plaintiff's Complaint contains no facts to support a conclusion that Gamo Spain is "at home" in Nevada.  *Goodyear*, 564 U.S. at 919 (holding that the foreign defendants were not "at home" and subject to general jurisdiction as they were not incorporated in the forum state and did not maintain a principal place of business in the forum state); *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1074 (9th Cir. 2011) (holding that plaintiff did not satisfy the "exacting" standard necessary to establish general jurisdiction of court over defendant when defendant had no offices or staff in the state; was not registered to do business in the state; had no registered agent for service of process; and paid no state taxes.) Accordingly, Plaintiff cannot establish general jurisdiction over Gamo Spain, and Plaintiff's Complaint against Gamo Spain should be dismissed.

**b.  <u>This Court Lacks Specific Jurisdiction over Defendant Gamo Spain.</u>**

Nevada and the Ninth Circuit Court of Appeals employ a three-prong test to determine whether a defendant's contacts with the forum allow for specific jurisdiction: (1) the non-resident defendant must purposefully direct his activities with the forum or forum resident; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice (i.e., it must be reasonable).  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014); *Goodyear*, 565 U.S. at 919.  Therefore, specific jurisdiction only attaches when the defendant's actions within the forum "give rise to the liabilities sued on."  *Daimler*, 134 S. Ct. at 754 (citing *Int'l Shoe,* 66 S. Ct. at 159).  Here, the exercise of specific jurisdiction over Gamo Spain is inappropriate because Gamo Spain has

not purposefully or otherwise directed any activities to Nevada, Gamo Spain has no contacts with Nevada, and it would be unjust to require Gamo Spain to defend itself in Nevada.  The exercise of specific jurisdiction over Gamo Spain does not comport with fair play and substantial justice.

i.  **Gamo Spain's Lack of Contacts in Nevada Requires a Finding in Favor of Gamo Spain as to the First Two Prongs of the Specific Jurisdiction Analysis.**

Plaintiff bears the burden of establishing the first two prongs of the specific jurisdiction analysis.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (citing *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990)).  For the first prong, a defendant's availment must be purposeful, "not random, isolated, or fortuitous." *LNS Enterprises LLC v. Contl. Motors, Inc.*, 22 F.4th 852, 859–60 (9th Cir. 2022) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 141 S. Ct. 1017, 1025 (2021).  Additionally, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284, 134 S. Ct. 1115).  In terms of products, "placing 'a product into the stream of commerce'—even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state'—'does not convert the mere act of placing the product into the stream of commerce into an act' of purposeful availment." *LNS Enterprises LLC,* 22 F.4th at 860 (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)).  Supreme Court jurisprudence requires "something more" than the mere placement of a product into a stream of commerce.  *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 111, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Second, the claim must "arise out of or relate to the defendant's contacts with the forum." *LNS Enterprises LLC*, 22 F.4th at 861 (citing *Ford*, 141 S. Ct. at 1025); *see also CollegeSource*, 653 F.3d at 1076.  Without purposeful availment and/or intentional direction of products into the forum, specific jurisdiction cannot be established.  *Id.*  The phrase "relate to" still "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *LNS Enterprises LLC*, 22 F.4th at 861.  For a

corporation, these contacts are sufficient when a corporation "deliberately extends its business into a forum when it has 'continuously and deliberately exploited [a State's] market' for the corporation's products." *LNS Enterprises LLC*, 22 F.4th at 861 (quoting *Ford*, 141 S. Ct. at 1027.)

Here, there is no purposeful availment or direction of products into Nevada. Gamo Spain simply cannot, and should not reasonably expect to, be subject to Nevada's jurisdiction. Gamo Spain manufactures its products in Spain, which are transferred to distributors such as Gamo USA (and presently to Daisy Manufacturing Corp.), the U.S. importer/distributor of Gamo Spain products, neither of which are located in, or related to, Nevada. (*See* Ex. F, Francisco Javier Méndez Rodríguez Declaration at ¶¶ 6, 15). Once these products are transferred to Gamo USA, Gamo Spain has no control over the products and has no knowledge or involvement in how the products are distributed, or to whom they are distributed. (*Id.* at ¶¶ 16, 21, 22, 23). Gamo Spain does not in any way control the Gamo USA's (or presently Daisey's) business, sales, marketing, or advertising decisions and does not control the channels or markets by which the products are sold by Gamo USA or any other distributor. (*Id.* at ¶ 16.)

As a result, Gamo Spain does not and cannot direct its product into Nevada, has no knowledge of whether its products are sold in Nevada, and did not perform any acts which resulted in the instant lawsuit. Accordingly, personal jurisdiction cannot be established. *See LNS Enterprises LLC v. Contl. Motors, Inc.*, 22 F.4th 852, 859–60 (9th Cir. 2022) (holding that Plaintiffs failed to establish personal jurisdiction over the manufacturers of airplane engines after a non-fatal airplane crash when defendants' contacts were clearly insufficient to render them subject to personal jurisdiction in Arizona because plaintiffs did not demonstrate that the defendants purposefully availed themselves of the privilege of doing business in Arizona).

As all of Gamo Spain's contacts are limited to its prior involvement with Gamo USA, which when it was in business conducted business out of Arkansas, Missouri and Florida, and Daisy which conducts business out of Arkansas. (*See* Ex. F, Francisco Javier Méndez Rodríguez Declaration at ¶

15).  Gamo Spain could not reasonably expect to be subject to Nevada's jurisdiction.  Accordingly, Plaintiff's claims against Gamo Spain must be dismissed for lack of specific jurisdiction.

> ### ii.   The Exercise of Jurisdiction Over Gamo Spain Does Not Comport with Fair Play and Substantial Justice.

As Plaintiff is unable to satisfy the first two prongs of the specific jurisdiction analysis, the inquiry is ended.  However, it is also worth noting that Plaintiff also cannot satisfy the third prong of the analysis as the exercise of specific jurisdiction over Gamo Spain would offend traditional notions of fair play and substantial justice.  In other words, the assertion of jurisdiction would not be reasonable.  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  When evaluating the reasonableness of a forum's exercise of jurisdiction, the Ninth Circuit Court of Appeals has evaluated seven factors: (1) the burden on the defendant, (2) existence of an alternative forum, (3) convenient and effective relief for the plaintiff, (4) the forum state's interest in adjudicating the suit, (5) efficient resolution of the controversy, (6) purposeful interjection, and (7) conflicts with sovereignty.  *Id.* (citing *Brand v. Menlove Dodge,* 796 F.2d 1070, 1075 (9th Cir.1986); *Pacific Atlantic Trading Co. v. The M/V Main Express,* 758 F.2d 1325, 1329–31 (9th Cir.1985)).  "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  *Id.* (quoting *Burger King,* 471 U.S. at 477, 105 S. Ct. at 2184.)

If jurisdiction were exercised over Gamo Spain, it would result in Gamo Spain being hailed into Nevada based on random and attenuated unknown acts by third parties.  As the Spanish manufacturer of the product, Gamo Spain has no control or knowledge about how the products are distributed within the United States and to whom its products are ultimately sold.  Gamo Spain has no knowledge or control over its products ultimate destination or route of transport.  As Gamo Spain does not market, advertise, distribute, or sell its products in Nevada, it would be unfair to require it to defend a cause of action in a venue in which it has no local activity.  The defense of this matter in Nevada would cause undue burden on Gamo Spain as none of Gamo Spain's employees, offices, witnesses,

and physical evidence are located in Nevada.  Therefore, an evaluation of the factors discussed in *Lake* demonstrates that the exercise of specific jurisdiction over Gamo Spain does not result in fair play and substantial justice, and should result in dismissal of Plaintiff's Complaint.

**C.  Plaintiff's Claims Against Gamo Spain Should be Dismissed under Rule 12(b)(6) for Failure to State a Claim based on the Doctrine of Laches.**

Plaintiff's claims against Gamo Spain should be dismissed under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted based on the doctrine of laches.  "Laches is an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'"  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012) (citing *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 950-51 (9th Cir.2001)).  Laches is an affirmative defense and can be properly addressed by courts on a Rule 12(b)(6) motion.  *Highland Tank & Mfg. Co. v. PS Intern., Inc.*, 393 F. Supp. 2d 348, 357 (W.D. Pa. 2005) (citing *Connor v. Highway Truck Drivers and Helpers, Local 107,* 378 F. Supp. 1069, 1073 (E.D.Pa.1974)); *see also Russell v. Thomas,* 129 F. Supp. 605, 605–06 (S.D. Cal. 1955) ("While Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that laches shall be set forth as an affirmative defense, nevertheless where the elements of laches are apparent on the face of the complaint, it may be asserted on a motion to dismiss for failure to state a claim upon which relief can be granted.").

To prove laches, the defendant must prove two points: (1) an unreasonable delay by the plaintiff and (2) prejudice to itself.  *Evergreen Safety Council*, 697 F.3d at 1226 (citing *Couveau v. Am. Airlines, Inc.,* 218 F.3d 1078, 1083 (9th Cir.2000)).  The evaluation period for determining the reasonableness of a delay begins when the plaintiff knew (or should have known) of the conduct and ends with the initiation of the lawsuit in which the defendant seeks to invoke the laches defense.  *Id.* at 1226-27 (citing *Kling v. Hallmark Cards, Inc.,* 225 F.3d 1030, 1036 (9th Cir.2000) ("any delay is to be measured from the time that the plaintiff knew or should have known about the potential claim at issue").  When determining the reasonableness of the delay, courts look to the cause of the delay.

*Id.* at 1227.

When evaluating whether the plaintiff's delay is prejudicial to the defendant in the laches context, the Ninth Circuit Court of Appeals has generally recognized two forms of prejudice: evidentiary and expectations-based. *Ibid.* (citing *Danjaq*, 263 F.3d at 955.) "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died." *Ibid.* "Expectations-based prejudice occurs when a defendant 'took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" *Ibid.*

Here, Plaintiff's delay in initiating the lawsuit and properly serving Gamo Spain is unreasonable. The incident at issue occurred in December 2016. Plaintiff then attempted to bring claims against Gamo Spain in August 2017 but never effectuated service and never showed good cause for the delay, leading to Gamo Spain's dismissal from the suit. Nearly four years later, Plaintiff filed the instant Complaint against Gamo Spain but did not effectuate service until even eight months later in March 2022, continuing to fail to assert any good cause for such a delay. Thus, Plaintiff waited six years to effectuate service of this lawsuit upon Gamo Spain and has not asserted good cause for this unreasonable delay.

Further, Plaintiff's delay is prejudicial to Gamo Spain in the form of evidentiary prejudice and expectations-based prejudice. Plaintiff's delay has prejudiced Gamo Spain in an evidentiary way because six years have passed since the incident, and witnesses' memories of the details of that night have certainly faded. Witnesses' testimony is critical to the claims Plaintiff sets forth, as they relate specifically to how the air gun functioned that evening, including the details that immediately preceded the incident. Plaintiff had an opportunity to properly bring suit against Gamo Spain in the initial lawsuit and failed to do so, without good cause. Since the filing of that suit, five years have passed, prejudicing Gamo Spain. Additionally, Plaintiff's delay has caused Gamo Spain to suffer expectations-based prejudice. If Plaintiff had brought the case against Gamo Spain sooner, then discovery could have occurred simultaneously, and Gamo Spain and Gamo USA could have shared

resources during the discovery process.  Yet, with this case commencing years later, discovery will need to be duplicated and substantial additional expense will be incurred by Gamo Spain compared to if the suit had been brought in a more timely manner.  Thus, Gamo Spain will suffer evidentiary and expectations-based prejudice due to Plaintiff's unreasonable delay in initiating this lawsuit against Gamo Spain.  For these reasons, the claims against Gamo Spain should be dismissed pursuant to FRCP. 12(b)(6) for failing to state a claim upon which relief can be granted based on the doctrine of laches.

### D.  Plaintiff's Claims Against Gamo Spain Should be Dismissed Under Rule 12(b)(6) as It is Untimely .

#### 1.  The Complaint was Not Timely Filed.

The statute of limitations for claims alleging personal injury in Nevada is two years.  Nev. Rev. Stat. § 11.190 (stating that within two years, a person must bring "an action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another.") With the subject incident occurring on August 16, 2016, Plaintiff would have had to bring this suit by August 16, 2018, in order for his claim not to be barred by the statute of limitations.  However, Plaintiff only filed the Complaint on July 13, 2021, and effectuated service on March 24, 2022, which is several years beyond the two-year statute of limitations, requiring dismissal of this action.

#### 2.  Plaintiff is not Entitled to any Tolling of the Statute of Limitations Based on Previously Being a Minor.

Nevada's minority tolling statutes provide that if a cause of action accrues when a plaintiff is a child, the statute of limitations on that cause of action may be suspended until the plaintiff attains the age of majority.  *See* Nev. Rev. Stat. § 11.250.  The policy reason underlying such tolling is "[b]ecause a minor does not have the understanding or experience of an adult, and because a minor may not bring an action except through a guardian . . . special safeguards are required to protect the minor's right of action." *W. Shield Investigations & Sec. Consultants v. Superior Court*, 82 Cal. App. 4th 935, 947 (Ct. App. 2000) (quoting *L.C. Amie v. Superior Court*, 99 Cal. App. 3d 421, 426 (Ct.

App. 1979)), disapproved of on other grounds by *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744 (Ct. App. 2002); *see also Seino v. Employers Ins. Co. of Nevada*, 111 P.3d 1107, 1112 (Nev. 2005) ("Generally, the purpose of statutory time limitations for judicial review is to prevent stale issues from being raised against a party. Nevertheless, in situations "[w]here the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate.") Tolling of the statute of limitations is an equitable doctrine. *See Copeland v. Desert Inn Hotel,* 673 P.2d 490 (Nev. 1983).

Here, there is no equitable or other basis to toll the statute of limitations. Plaintiff's right of action was protected when his original suit was originally amended to name Gamo Spain as a Defendant. Gamo Spain remained as a Defendant in the state court action for well over two years. It was ultimately dismissed from the state court action not due to any failure of Plaintiff's guardian (mother) but rather due to the decisions or strategy of his attorneys in the state court action who are his same attorneys in this action. The decision not to serve Gamo Spain was not impacted by, or the result of, the minority of the child, and was not a result of inaction or improper action of his then-guardian who was the named Plaintiff in the state court action. Simply, Plaintiff's rights were properly exercised when Gamo Spain was named as a Defendant in the original action, and there is no basis to toll the statute of limitations due to its subsequent dismissal.

### 3.   Plaintiff is not Entitled to any Equitable Tolling of the Statute of Limitations.

"Equitable tolling [is a] doctrine that permits a court to [pause] a statute of limitations [if] the court finds that an inequitable event has prevented [a] plaintiff[']s timely action." *Psurny v. Royal Caribbean Cruises, Ltd.*, 926 F. Supp. 2d 1325, 1328-29 (S.D. Fla. 2013). Common examples of inequitable events include, but are not limited to, "[a] defendant mislead[ing] the plaintiff into allowing the statutory period [to] lapse, [a] plaintiff ha[ving] no reasonable way of discovering the wrong perpetrated against him or her, or [a] plaintiff timely fil[ing] a technically defective pleading, but in all other respects act[ing] with the proper diligence." *Id.*

"[A] court may pause the running of a limitation's statute . . . when a party 'has pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline."  U.S. v. *Wong*, 575 U.S. 402, 408 (2015) (quoting *Lozano v. Montoya Alvarez,* 572 U.S. 1 (2014)).   In applying equitable tolling, courts "follow a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity."  *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded sub nom. U.S. v. Wong*, 575 U.S. 402 (2015) (citing *Holland v. Florida*, 560 U.S. 631, 650, 130 S. Ct. 2563, 177 L. Ed. 2d 130 (2010).

To obtain equitable tolling a litigant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  *Id.* (citation omitted). The first element requires "the effort that a reasonable person might be expected to deliver under his or her particular circumstances."  *Id.*  (quoting *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)).  It asks whether the plaintiff was "'without any fault' in pursuing his claim."  *Id.* (quoting *FEC v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996)).  The second element requires the litigant to "show that extraordinary circumstances were the cause of his untimeliness and . . . made it impossible to file the document on time."  *Id.* (quoting *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009)).  "Whether a particular untimely claim may be excused for a particular reason varies with the reason."  *Id.* at 1051.

Here, there is no basis to apply equitable tolling.  Plaintiff, as a minor and through his mother, sought an attorney and filed suit against Gamo Spain and other defendants shortly after the incident. However, for strategic reasons, Plaintiff did not attempt to effectuate service on Gamo Spain and did not pursue his rights diligently with respect to Gamo Spain.  Further, Plaintiff did not experience extraordinary circumstances preventing service on Gamo Spain.  Plaintiff's attorneys decided to not serve Gamo Spain and declined to demonstrate any good cause for failing to do so, resulting in Gamo Spain's dismissal from the initial action.  Thus, there is no basis to apply equitable tolling to Plaintiff's claims.

IV.  **CONCLUSION**

Based on the foregoing, Defendant Gamo Spain hereby moves this Honorable Court, for

dismissal as a defendant in this action and pursuant to F.R.C.P. 12(b)(2), 12(b)(5) and 12(b)(6).

Respectfully submitted this 29th day of April 2022.

                                        **LINCOLN, GUSTAFSON & CERCOS, LLP**

                                        */s/ Loren S. Young*

                                        _____
                                        **LOREN S. YOUNG, ESQ.**
                                        Nevada Bar No. 7567
                                        3960 Howard Hughes Parkway, Suite 200
                                        Las Vegas, Nevada 89169

                                        *Attorneys for Defendant*
                                        *Gamo Outdoor S.L.U.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed and served upon the following persons via ECF, this 29th day of April 2022:

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.
Robert E. Murdock (Bar No. 4013)
Eckley M. Keach (Bar No. 1154)
521 South Third Street
Las Vegas, NV 89101

*Attorneys for Plaintiff*

By:  */s/ Michelle McCracken*
     _____
     Michelle McCracken, an employee of
     Lincoln Gustafson & Cercos, LLP

# EXHIBIT A

EXHIBIT A

A-16-748401-C

## DISTRICT COURT CIVIL COVER SHEET   XX

_____County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

### I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| ZACHARY LONG, a minor, by and through Aura Truelove, his Natural Mother | ROBERT RAMIREZ, individually, |
| | ROBERTO RAMIREZ, individually, |
| | DONNY CHALMERS, individually, |
| | DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Robert E. Murdock, Esq. and Eckley M. Keach, Esq. | |
| 521 South Third Street, Las Vegas, NV 89101 | |
| Phone: (702) 685-6111 | |

### II. Nature of Controversy *(please select the one most applicable filing type below)*

**Civil Case Filing Types**

| Real Property | Torts | |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☑ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☐ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

## December 20, 2016
_____
Date

_____
Signature of initiating party or representative

*See other side for family-related case filings.*

Electronically Filed
12/20/2016 08:41:25 AM

**CLERK OF THE COURT**

1

**COMP**
Robert E. Murdock, Esq.
2
Nevada Bar No. 4013
MURDOCK & ASSOCIATES, CHTD.
3
521 South Third Street
4
Las Vegas, NV 89101
702-685-6111
5

6
Eckley M. Keach, Esq.
Nevada Bar No. 1154
7
ECKLEY M. KEACH, CHTD.
521 South Third Street
8
Las Vegas, NV 89101
9
702-685-6111
*Attorneys for Plaintiff*
10

11                                **DISTRICT COURT**

12                          **CLARK COUNTY, NEVADA**

13  ZACHARY LONG, a minor, by and through        CASE NO.:   A-16-748401-C
Aura Truelove, his Natural Mother,              DEPT. NO.:
14
                                                              XX
15                              Plaintiff,
                                                    **COMPLAINT**
16  vs.

17  ROBERT      RAMIREZ,      individually,
18  ROBERTO     RAMIREZ,      individually,
DONNY CHALMERS, individually, DOES I
19  through    X,   inclusive;   and   ROE
CORPORATIONS I through X, inclusive,
20

21                              Defendants.

22

23          COMES NOW Zachary Long, a minor, by and through Aura Truelove, his Natural Mother,

24  by and through his attorneys of record, Murdock & Associates, Chtd. and Eckley M. Keach, Chtd.,

25  and for his causes of action, alleges as follows:

26      1.  That at all times mentioned herein, Plaintiff Zachary Long (hereinafter "Zachary") was and
27
            is a resident of Clark County, Nevada.
28

                                        1

2. That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Robert Ramirez, was and is a resident of Clark County, Nevada.

3. That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Roberto Ramirez, was and is a resident of Clark County, Nevada, and was and is the natural son of Defendant Robert Ramirez, and lived at home with his father.

4. That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Donny Chalmers, was and is a resident of Clark County, Nevada.

5. That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Doe defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join such defendants in this action.

6. That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Roe Corporations I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Roe Corporation is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names

2

and capacities of said Roe Corporation defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations and to join such defendants in this action.

7. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants, and each of them, were the agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees of each other, and in doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees and with the permission, knowledge, consent ratification and/or acknowledgment of each other are vicariously liable for all damages and harm suffered by plaintiff, as herein below alleged, under the doctrine of respondeat superior, in addition to all other theories of liability asserted against said entities in the causes of action which follow.

## GENERAL ALLEGATIONS

8. Plaintiff hereby re-alleges those allegations contained in paragraphs 1 through 7 herein and incorporates same by reference as though fully set forth herein.

9. On or about April 15, 2016, Zachary Long was a guest at the house of Robert and Roberto Ramirez.

10. Also visiting Robert and Roberto Ramirez at the same time was Donny Chalmers.

11. Zachary Long, Roberto Ramirez, and Donny Chalmers were friends and were visiting with each other.

12. The three young men were gathered in the family room of the Ramirez home.

//

3

13. Upon information and belief, sometime prior to April 15, 2016, Robert Ramirez purchased a gun manufactured by Industrias El Gamo and distributed by Gamo USA.

14. The gun was a GAMO Shadow Sport .177 caliber pellet air rifle, single shot with a break barrel, capable of firing a lead .177 caliber pellet at 1000 fps.

15. The gun was in the room in which the three young men were gathered.

16. Donny Chalmers picked up the gun, and as he was holding the gun, it fired.

17. The gun discharged firing a GAMO Hunter .177 caliber lead pellet designed for greater impact.

18. The .177 caliber pellet struck Zachary Long in the temple causing severe and horrendous injuries.

19. Neither Robert nor Roberto Ramirez took any steps to properly and safely store the gun.

20. Neither Robert nor Roberto Ramirez took any steps to place a trigger lock, or any other safety device on the gun to prevent an accidental or inadvertent discharge.

21. Neither Robert nor Roberto Ramirez took any steps to insure the gun was not sitting around in a loaded condition.

22. Neither Robert nor Roberto Ramirez took any steps to warn Donny Chalmers that the gun was, or could be loaded.

23. Upon information and belief, when Donny Chalmers picked up the gun, he was unaware the gun was loaded.

24. Upon information and belief there was nothing on the gun, or about the condition of the gun, that would indicate to Donny Chalmers that the gun was loaded.

25. Upon information and belief Donny Chalmers did not ask anyone if the gun was loaded nor did he undertake any investigation to determine if the gun was loaded, if it had a safety

4

mechanism, or if it could accidentally or inadvertently discharge.

26. Gamo Outdoor USA was the distributor for guns manufactured by Industrias El Gamo, S.A., including the .177 caliber pellet air rifle that is the subject of this complaint.

27. The gun at issue was manufactured on an unknown date.

28. It bears serial number 04-1C (or possibly "10") 365162-09.

29. Regarding the particular type of pellet in the gun on April 15, 2016, GAMO states on its website GAMOUSA.com, "Due to the heavier weight and dome configuration, this pellet performs with terrific impact, even at long distance shots." The pellet has a "round nose" which makes it "hard hitting" such that "This pellet is capable of taking down a fairly good size hog within 35 yards." (gamousa.com).

30. According to the barrel of the gun, some pellets can be fired from the gun at 1200 fps while others with lead pellets, such as the pellet that struck Zachary Long, travel at a velocity of 1000 fps.

31. Defendants knew, or with the exercise of due care should have known, that this particular pellet gun, firing these particular pellets, would inflict serious bodily injury if they were to strike a person.

32. Plaintiff's injuries were caused by the negligence, and gross negligence, of defendants, and each of them, proximately causing the injuries, damages, pain and suffering as complained of herein.

33. Defendants, and each of them, had a duty to Zachary Long, which as detailed hereinabove, was breached by these defendants.

34. As a direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer great pain and suffering

of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, all to his general damage in an amount in excess of $10,000.00.

35. As a direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG will continue to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the future and for the rest of his life, all to his general damage in an amount in excess of $10,000.00.

36. As a further and direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG has incurred expenses for medical care and treatment in an amount in excess of $10,000.00, and in a sum according to proof at trial.

37. As a further and direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG will continue to incur expenses for medical care and treatment for the rest of his life in an amount in excess of $10,000.00, and in a sum according to proof at trial.

38. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a loss of earnings and earning capacity, in the past and in the future for the rest of his life in an amount in excess of $10,000.00, and in a sum according to proof at trial.

39. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a devastating and horrendous physical impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $10,000.00.

40. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $10,000.00.

41. The negligent conduct, actions and breaches by defendants were intentional, willful, wanton, oppressive, malicious and with a conscious disregard to the rights of plaintiff and the decedent; plaintiff seeks exemplary and punitive damages in an amount in excess of $10,000.00.

42. It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as set forth below:

1. For general damages, including but not limited to pain and suffering, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future, in an amount in excess of $10,000.00;

2. For special damages, including but not limited to medical expenses for medical care and treatment, in the past and in the future, in an amount in excess of $10,000.00;

3. For damages for loss of earnings and earning capacity, in the past and in the future in an amount in excess of $10,000.00;

4. For damages for physical impairment, in the past and in the future, in an amount in excess of $10,000.00;

5. For damages for disfigurement, in the past and in the future, in an amount in excess of $10,000.00;

6.     For punitive damages in an amount in excess of $10,000.00;

7.     For attorney's fees and costs;

8.     For pre-judgment and post-judgment interest; and

9.     For such other and further relief as the Court deems just and proper.

DATED this 20th day of December, 2016.

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.

/s/ Robert E. Murdock

Robert E. Murdock      Bar No. 4013
Eckley M. Keach        Bar No. 1154
521 South Third Street
Las Vegas, NV  89101
Attorneys for Plaintiff

# EXHIBIT B

# EXHIBIT B

Electronically Filed
8/16/2017 3:08 PM
Steven D. Grierson
CLERK OF THE COURT

1   **FAC**
Robert E. Murdock, Esq.

2   Nevada Bar No. 4013
MURDOCK & ASSOCIATES, CHTD.

3   521 South Third Street
Las Vegas, NV 89101

4   702-685-6111

5

6   Eckley M. Keach, Esq.
Nevada Bar No. 1154

7   ECKLEY M. KEACH, CHTD.
521 South Third Street

8   Las Vegas, NV 89101
702-685-6111

9   *Attorneys for Plaintiff*

10

11                      **DISTRICT COURT**

12                 **CLARK COUNTY, NEVADA**

13   ZACHARY LONG, a minor, by and through          CASE NO.: A-16-748401-C
     Aura Truelove, his Natural Mother,             DEPT. NO.: XXXII
14

15                           Plaintiff,

16   vs.                                            **FIRST AMENDED COMPLAINT**

17   ROBERT      RAMIREZ,      individually,
18   ROBERTO     RAMIREZ,      individually,
     DONNY CHALMERS, individually; GAMO
19   OUTDOOR    USA    INC.,   a    Florida
     corporation; INDUSTRIAS EL GAMO, S.A.,
20   a Spanish corporation, DOES I through X,
     inclusive;  and  ROE  CORPORATIONS  I
21   through X, inclusive,

22
                             Defendants.
23

24

25          COMES NOW Zachary Long, a minor, by and through Aura Truelove, his Natural Mother,

26   by and through his attorneys of record, Murdock & Associates, Chtd. and Eckley M. Keach, Chtd.,

27   and for his causes of action, alleges as follows:

28

                                         1

1.  That at all times mentioned herein, Plaintiff Zachary Long (hereinafter "Zachary") was and is a resident of Clark County, Nevada.

2.  That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Robert Ramirez, was and is a resident of Clark County, Nevada.

3.  That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Roberto Ramirez, was and is a resident of Clark County, Nevada, and was and is the natural son of Defendant Robert Ramirez, and lived at home with his father.

4.  That Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, Defendant Donny Chalmers, was and is a resident of Clark County, Nevada.

5.  That Gamo Outdoor USA, Inc. is a Florida Corporation (hereinafter GOUSA);

6.  That INDUSTRIAS EL GAMO, S.A., is a Spanish corporation (hereinafter IEGSA).

7.  That GOUSA is the distributor of guns in the United States that are manufactured by IEGSA. Upon information and belief, IEGSA has an ownership stake in GOUSA. That GOUSA and IEGSA are inextricably intertwined and/or are the alter egos of one another. That the products of GOUSA and IEGSA are intentionally distributed to, and, sold, in the State of Nevada.

8.  That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Doe defendants

2

when same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join such defendants in this action.

9.  That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Roe Corporations I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Roe Corporation is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Roe Corporation defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations and to join such defendants in this action.

10. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants, and each of them, were the agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees of each other, and in doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees and with the permission, knowledge, consent ratification and/or acknowledgment of each other are vicariously liable for all damages and harm suffered by plaintiff, as herein below alleged, under the doctrine of respondeat superior, in addition to all other theories of liability asserted against said entities in the causes of action which follow.

//

//

3

**GENERAL ALLEGATIONS**

11. Plaintiff hereby re-alleges those allegations contained in paragraphs 1 through 10 herein and incorporates same by reference as though fully set forth herein.

12. On or about April 15, 2016, Zachary Long was a guest at the house of Robert and Roberto Ramirez.

13. Also visiting Robert and Roberto Ramirez at the same time was Donny Chalmers.

14. Zachary Long, Roberto Ramirez, and Donny Chalmers were friends and were visiting with each other.

15. The three young men were gathered in the family room of the Ramirez home.

16. Upon information and belief, sometime prior to April 15, 2016, Robert Ramirez purchased a gun manufactured by Industrias El Gamo, S.A. and distributed by Gamo USA.

17. The gun was a GAMO Shadow Sport .177 caliber pellet air rifle, single shot with a break barrel, capable of firing a lead .177 caliber pellet at 1000 fps (hereinafter referred to as "The Gun").

18. The Gun was in the house in which the three young men were gathered and was out in the open.

19. Donny Chalmers picked up the Gun, and as he was holding the Gun, it fired.

20. Donny Chalmers believed it was a toy gun. He knew nothing about guns and had no idea that a gun that seemed like a toy gun, was real, that it had a pellet in it, and that it was "pumped."

21. Donny Chalmers placed his finger on the trigger and the Gun fired.

22. The Gun discharged firing a GAMO Hunter .177 caliber lead pellet designed for greater impact.

4

23. The .177 caliber pellet struck Zachary Long in the temple causing severe and horrendous injuries.

24. Neither Robert nor Roberto Ramirez took any steps to properly and safely store the Gun.

25. Neither Robert nor Roberto Ramirez took any steps to place a trigger lock, or any other safety device on the Gun to prevent an accidental or inadvertent discharge.

26. Neither IEGSA nor GOUSA sold the Gun with a trigger lock to prevent an accidental or inadvertent discharge.

27. Neither Robert nor Roberto Ramirez took any steps to insure the Gun was not sitting around in a loaded condition.

28. Neither Robert nor Roberto Ramirez took any steps to warn Donny Chalmers that the Gun was, or could be loaded.

29. Upon information and belief, when Donny Chalmers picked up the Gun, he was unaware the Gun was loaded.

30. Upon information and belief there was nothing on the Gun, or about the condition of the Gun, that would indicate to Donny Chalmers that the Gun was loaded.

31. Upon information and belief Donny Chalmers did not ask anyone if the Gun was loaded nor did he undertake any investigation to determine if the Gun was loaded, if it had a safety mechanism, or if it could accidentally or inadvertently discharge.

32. Gamo Outdoor USA was the distributor for guns manufactured by Industrias El Gamo, S.A., including the .177 caliber pellet air rifle that is the subject of this complaint.

33. The Gun was manufactured by IEGSA and distributed to the State of Nevada by GOUSA.

34. The Gun was defectively designed in that it did not have a trigger lock on it nor did it have a warning system which would indicate that the gun was loaded and/or cocked. The defect

5

existed when the Gun left the hands of GOUSA and IEGSA.

35. Alternatively, the Gun had a manufacturing defect in that the Gun could fire without pulling the trigger in a safe fashion. The defect existed when the Gun left the hands of GOUSA and IEGSA.

36. Alternatively, there was a failure to warn of the danger of the Gun—that it was a real gun and could be loaded and cocked, *on the Gun itself* in markings that would convey to the reasonable consumer that the Gun was a danger and not a toy. For example, the Gun violated ANSI Z535 (et. seq.) by failing to describe the nature of the hazard, the consequences, avoidance, and seriousness level on The Gun.

37. Regarding the particular type of pellet in the Gun on April 15, 2016, GAMO states on its website GAMOUSA.com, "Due to the heavier weight and dome configuration, this pellet performs with terrific impact, even at long distance shots." The pellet has a "round nose" which makes it "hard hitting" such that "This pellet is capable of taking down a fairly good size hog within 35 yards." (gamousa.com).

38. According to the barrel of the Gun, some pellets can be fired from the Gun at 1200 fps while others with lead pellets, such as the pellet that struck Zachary Long, travel at a velocity of 1000 fps.

39. GAMO and Industrias El Gamo, S.A. were aware that this particular pellet gun, firing these particular pellets could inflict serious bodily injury since they touted its ability to inflict injury on a hog.

40. Even though GAMO and Industrias El Gamo, S.A. were aware that this particular pellet gun, firing these particular pellets could inflict serious bodily injury, due to the fact that this

6

was a pellet gun, they were not required to follow all of the rules and regulations required of firearm and firearm ammunition manufacturers.

41. A pellet gun, even one powerful enough to take down a hog, is not a firearm under Federal law.

42. 18 U.S.C. § 921(a)(3) states: "The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

43.  Because a pellet gun, such as the one involved in this suit, uses compressed air and not an explosive to expel a projectile, it is not a firearm under Federal law and is not subject to the rules and regulations relating to the safety of firearms and firearm ammunition.

44. Many states, including Nevada, do not have air gun laws.

45. However, even though neither the State of Nevada nor the Federal government have such laws, approximately half of the other states have laws regulating air guns, such as the pellet gun used in this case.

46. Moreover, many modern countries, including Australia, Brazil, Canada, Czech Republic, France, Germany, Isle of Man, Italy, Netherlands, New Zealand, Poland, Singapore, South Africa, Sweden, United Kingdom have laws regulating air guns, such as the pellet gun used in this case.

47. While GAMO and Industrias El Gamo, S.A. may not have violated any specific laws in Nevada regarding the manufacture and sale of air guns, such as the pellet gun in this case, they were well aware of safety restrictions placed upon such weapons.

7

48. GAMO and Industrias El Gamo, S.A. knew many states and countries regulated air guns, such as the pellet gun in this case, because of their dangers.

49. It is well known in the industry, including to GAMO and Industrias El Gamo, S.A. that air guns, such as the pellet gun in this case, can fire or discharge unexpectedly and could cause serious injury.

50. It is well known in the industry, including to GAMO and Industrias El Gamo, S.A. that air guns, such as the pellet gun in this case, are used by children and/or persons with little to no experience in the handling of guns.

51. The gun at issue was manufactured on an unknown date.

52. It bears serial number 04-1C (or possibly "10") 365162-09.

53. Defendants knew, or with the exercise of due care should have known, that this particular pellet gun, firing these particular pellets, would inflict serious bodily injury if they were to strike a person.

54. Plaintiff's injuries were caused by the negligence, and gross negligence, of defendants, and each of them, proximately causing the injuries, damages, pain and suffering as complained of herein.

55. In addition, and as detailed hereinabove, as to IEGSA and GOUSA, Plaintiff's injuries were caused by the design defect and/or manufacturing defect of The Gun and they are strictly liable for all such injuries related thereto.

56. Defendants, and each of them, had a duty to Zachary Long, which as detailed hereinabove, was breached by these defendants.

57. As a direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer great pain and suffering of

body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, all to his general damage in an amount in excess of $15,000.00.

58. As a direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG will continue to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the future and for the rest of his life, all to his general damage in an amount in excess of $15,000.00.

59. As a further and direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG has incurred expenses for medical care and treatment in an amount in excess of $15,000.00, and in a sum according to proof at trial.

60. As a further and direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG will continue to incur expenses for medical care and treatment for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

61. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a loss of earnings and earning capacity, in the past and in the future for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

62. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a devastating and horrendous physical impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

63. As a further direct and proximate result of the breaches of duty by the defendants, and each of them, as herein alleged, ZACHARY LONG was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

64. The negligent conduct, actions and breaches by defendants were intentional, willful, wanton, oppressive, malicious and with a conscious disregard to the rights of plaintiff and the decedent; plaintiff seeks exemplary and punitive damages in an amount in excess of $15,000.00.

65. It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as set forth below:

1. For general damages, including but not limited to pain and suffering, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future, in an amount in excess of $15,000.00;

2. For special damages, including but not limited to medical expenses for medical care and treatment, in the past and in the future, in an amount in excess of $15,000.00;

3. For damages for loss of earnings and earning capacity, in the past and in the future in an amount in excess of $15,000.00;

4. For damages for physical impairment, in the past and in the future, in an amount in excess of $15,000.00;

5. For damages for disfigurement, in the past and in the future, in an amount in excess of $15,000.00;

10

6.      For punitive damages in an amount in excess of $15,000.00;

7.      For attorney's fees and costs;

8.      For pre-judgment and post-judgment interest; and

9.      For such other and further relief as the Court deems just and proper.

DATED this 16th day of August, 2017.

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.

/s/ Robert E. Murdock

Robert E. Murdock     Bar No. 4013
Eckley M. Keach     Bar No. 1154
521 South Third Street
Las Vegas, NV  89101
Attorneys for Plaintiff

11

# EXHIBIT C

# EXHIBIT C

1   **LOREN S. YOUNG, ESQ.**
Nevada Bar No. 7567
2   **MARK B. BAILUS, ESQ.**
Nevada Bar No. 2284
3   **LINCOLN, GUSTAFSON & CERCOS, LLP**
3960 Howard Hughes Parkway, Suite 200
4   Las Vegas, Nevada 89169
Telephone:     (707) 257-1997
5   Facsimile:     (702) 257-2203
lyoung@lgclawoffice.com
6
**ANTHONY M. PISCIOTTI, ESQ.**
7   (Admitted *Pro Hac Vice*)
apisciotti@pmlegalfirm.com
8   **RYAN L. ERDREICH, ESQ.**
(Admitted *Pro Hac Vice*)
9   rerdreich@pmlegalfirm.com
**PISCIOTTI MALSCH**
10  30 Columbia Turnpike, Ste. 205
Florham Park, NJ 07932
11  Telephone:     (973) 245-8100
Facsimile:     (973) 245-8101
12
Attorneys for Defendant, GAMO OUTDOOR USA, INC.
13

14                            **DISTRICT COURT**

15                       **CLARK COUNTY, NEVADA**

16   ZACHARY LONG, a minor, by and through      CASE NO. A-16-748401-C
     Aura Truelove, his Natural Mother,
17                                              Dept. No. 32
              Plaintiff,
18
     v.
19
     ROBERT RAMIREZ, et al.,
20
              Defendants.
21

22        **DECLARATION OF FRANCISCO JAVIER MÉNDEZ RODRÍGUEZ**

23

**COUNTRY OF SPAIN**        )
24                          )        **ss**
**CITY OF BARCELONA**       )
25

         I, FRANCISCO JAVIER MÉNDEZ RODRÍGUEZ, deposes, declare and says:
26
         1.     I am over 18 years of age and competent to make this declaration.
27

28

                                    -1-

2.     I am currently the Chief Financial Officer for GAMO Outdoor S.L.U. I have worked in this capacity for GAMO Outdoor S.L.U. for eleven years. I have direct knowledge of all matters stated below.

3.     I am submitting this declaration to clarify the corporate relationship between GAMO Outdoor S.L.U., Industrias El GAMO, S.A., and GAMO Outdoor USA, Inc.

4.     In February of 2009, Industrias EL GAMO, S.A. changed its legal corporate name to GAMO Outdoor S.L.

5.     In August of 2013, the ownership of GAMO Outdoor S.L. changed to a single shareholder, and under the corporate laws of Spain, the name of the company changed to GAMO Outdoor S.L.U.[1]

6.     From the corporate name change in February of 2009 until June of 2016, GAMO Outdoor S.L. (and then GAMO Outdoor S.L.U.) has been the sole shareholder of GAMO Outdoor USA, Inc.

7.     From June of 2016 to present, GAMO Outdoor S.L.U. and GAMO Outdoor USA, Inc. are separate affiliated corporate entities with the same ultimate parent company.

8.     GAMO Outdoor S.L./GAMO Outdoor S.L.U. and GAMO Outdoor USA, Inc. are separate legal entities that maintain the required corporate formalities.

9.      GAMO Outdoor USA, Inc. is the U.S. importer and distributor of GAMO air guns which are manufactured by GAMO Outdoor S.L./GAMO Outdoor S.L.U. in Spain.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Dated: February 4, 2020

_____
FRANCISCO JAVIER MÉNDEZ RODRÍGUEZ

---

[1] The corporate designation "S.L." means "sociedad limitiada" or a limited liability company. The letter "U" means "unipersonal" and is added to the corporate designation when the company has a single shareholder.

# EXHIBIT D

# EXHIBIT D

Electronically Filed
1/30/2020 2:31 PM
Steven D. Grierson
CLERK OF THE COURT

1  **ORDR**
   **LOREN S. YOUNG, ESQ.**
2  Nevada Bar No. 7567
   **MARK B. BAILUS, ESQ.**
3  Nevada Bar No. 2284
   **LINCOLN, GUSTAFSON & CERCOS, LLP**
4  3960 Howard Hughes Parkway, Suite 200
   Las Vegas, Nevada 89169
5  Telephone:     (707) 257-1997
   Facsimile:      (702) 257-2203
6  lyoung@lgclawoffice.com
   mbailus@lgclawoffice.com
7
   **ANTHONY M. PISCIOTTI, ESQ.**
8  (Admitted *Pro Hac Vice*)
   apisciotti@pmlegalfirm.com
9  **JEFFREY MALSCH, ESQ.**
   (Admitted Pro Hac Vice)
10 jmalsch@pmlegalfirm.com
   **RYAN L. ERDREICH, ESQ.**
11 (Admitted *Pro Hac Vice*)
   rerdreich@pmlegalfirm.com
12 **PISCIOTTI MALSCH**
   30 Columbia Turnpike, Ste. 205
13 Florham Park, NJ 07932
   Telephone:     (973) 245-8100
14 Facsimile:      (973) 245-8101

15 Attorneys for Defendant, INDUSTRIAS EL GAMO, S.A.

16
                        **DISTRICT COURT**
17
                     **CLARK COUNTY, NEVADA**
18

19 ZACHARY LONG, a minor, by and through        CASE NO. A-16-748401-C
   Aura Truelove, his Natural Mother,
20                                               Dept. No. 32
                  Plaintiff,
21
   v.
22
   ROBERT RAMIREZ, individually,               **ORDER GRANTING DEFENDANT**
23 ROBERTO RAMIREZ, individually,              **INDUSTRIAS EL GAMO, S.A.'S MOTION**
   DONNY CHALMERS, individually; GAMO          **TO DISMISS PLAINTIFF'S COMPLAINT**
24 OUTDOOR USA INC., a Florida                 **WITHOUT PREJUDICE**
   corporation; INDUSTRIAS EL GAMO, S.A.,
25 a Spanish corporation, DOES I through X,
   inclusive; and ROE CORPORATIONS I
26 through X, inclusive,

27                Defendants.

28

                              -1-

1    Defendant, INDUSTRIAS EL GAMO, S.A.'S Motion to Dismiss Plaintiff's Complaint came

2    up for hearing on January 14, 2020 at 9:30 a.m., with the Honorable Rob Bare presiding.  Defendant,

3    INDUSTRIAS EL GAMO, S.A. appeared by and through its counsel of record, Jeffrey Malsch, Esq.

4    of the Law Firm Pisciotti Malsch and Loren S. Young, Esq. of Lincoln, Gustafson & Cercos, LLP and

5    Plaintiff, ZACHARY LONG, a minor, by and through Aura Truelove ("Plaintiff"), appeared by and

6    through his counsel of record, Eckley M. Keach, Esq. of Eckley M. Keach, Chtd Firm:

7        Defendant, INDUSTRIAS EL GAMO, S.A. filed a Motion to Dismiss Plaintiff's Complaint

8    on December 13, 2019; Plaintiff filed his Opposition and Countermotion to Extend Time for Service

9    on December 23, 2019; Defendant filed its reply and opposition on January 6, 2020.  Having reviewed

10   the papers and pleadings on file herein, and having heard oral arguments of the parties, this Court finds

11   as follows:

12       IT IS HEREBY ORDERED that Defendant, INDUSTRIAS EL GAMO, S.A.'S Motion to

13   Dismiss Plaintiff's Complaint is hereby GRANTED, without prejudice,

14       DATED this ___ day of January, 2020.

15

16

17                                           DISTRICT COURT JUDGE
       ROB BARE
       JUDGE, DISTRICT COURT, DEPARTMENT 32

18   Submitted by:                          Approved as to form and content:

19   **LINCOLN, GUSTAFSON & CERCOS**        **ECKLEY M. KEACH, CHTD.**

20

21
     **LOREN S. YOUNG, ESQ.**              **ECKLEY M. KEACH, ESQ.**
22   Nevada Bar No. 7567                    Nevada Bar No. 1154
     3960 Howard Hughes Parkway, Suite 200  521 South Third Street
23   Las Vegas, Nevada 89169                Las Vegas, NV  89101
                                            Attorneys for Plaintiff, ZACHARY LONG
24   and

25   **PISCIOTTI MALSCH**
     Jeffrey Malsch, Esq.
26   (Admitted *Pro Hac Vice*)
     30 Columbia Turnpike, Suite 205
27   Florham Park, NJ 07932
     Attorneys for INDUSTRIAS EL GAMO, S.A.
28   v:\k-o\long_gamo\atty notes\drafts\pldgs\20200123 ordr mtd_lsy.docx

# EXHIBIT E

# EXHIBIT E

Electronically Filed
7/13/2021 2:32 PM
Steven D. Grierson
CLERK OF THE COURT

**COMJD**
Robert E. Murdock, Esq.
Nevada Bar No. 4013
MURDOCK & ASSOCIATES, CHTD.
521 South Third Street
Las Vegas, NV 89101
702-685-6111

CASE NO: A-21-837765-C
Department 14

Eckley M. Keach, Esq.
Nevada Bar No. 1154
ECKLEY M. KEACH, CHTD.
521 South Third Street
Las Vegas, NV 89101
702-685-6111
*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ZACHARY LONG, individually,<br><br>    Plaintiff,<br><br>vs.<br><br>GAMO OUTDOOR S.L.U., a Spanish corporation; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>    Defendants. | CASE NO.:<br>DEPT. NO.:<br><br>**COMPLAINT** |

    COMES NOW Plaintiff Zachary Long, by and through his attorneys of record, Murdock & Associates, Chtd. and Eckley M. Keach, Chtd., and for his causes of action, alleges as follows:

## I.  PARTIES

1. That at all times mentioned herein, Plaintiff Zachary Long (hereinafter "Zachary") was born on September 15, 2001, and is a resident of Clark County, Nevada.

1

2.      That Defendant Gamo Outdoor S.L.U. is a Spanish Corporation (hereinafter Gamo Spain), with its principle place of business at Carretera Santa Creu de Calafell Nº 43, 08830 Sant Boi de Llobregat, Barcelona, Spain, and it researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the line Gamo Shadow Sport rifles identical to the Shadow Sport rifle that shot Zachary, as well as other, similar single shot, break barrel, spring piston Gamo air rifles.

3.      That Gamo Outdoor USA, Inc. (hereafter Gamo US) is the distributor of guns in the United States that are manufactured by Gamo Spain.

4.      Defendant Gamo Spain and Gamo US, jointly and in active concert with each other, promoted, marketed, distributed, and/or sold the line of Gamo Shadow Sport rifles in the State of Nevada, purposefully availed themselves of the benefits and protections of the State of Nevada, and/or has or had sufficient contacts with the State of Nevada that maintenance of this action in this locale would be consistent with traditional notions of fair play and substantial justice.

5.      That Defendant Gamo Spain and Gamo US are inextricably intertwined, are engaged in a joint enterprise and/or are the alter egos of one another. Plaintiff further alleges upon information and belief that Gamo US is/was the alter ego of Defendant Gamo Spain as set forth herein, and each of them named herein, having influenced and governed the entities, there is such unity of interest and ownership that the entities are inseparable from each other, and adherence to the notion of the separate corporations would sanction fraud or manifest injustice.

6.      Defendant Gamo Spain is liable for the damages caused to Plaintiff as a result of the duties owed to Plaintiff, and the injuries caused by their defective product, separate and apart from their role as alter egos.

2

7.     That the products of Gamo Spain are intentionally distributed to, and sold, in the State of Nevada.

8.     That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Doe defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join such defendants in this action.

9.     That the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Roe Corporations I through X are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Roe Corporation is negligently responsible in some manner for the events and happenings herein referred to and negligently caused injury and damages proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Roe Corporation defendants when same have been ascertained by Plaintiff, together with the appropriate charging allegations and to join such defendants in this action.

10.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants, and each of them, were the agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees of each other, and in

doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, partners, associates, officers, directors, staff members, faculty members, joint ventures, contractors and/or employees and with the permission, knowledge, consent ratification and/or acknowledgment of each other are vicariously liable for all damages and harm suffered by plaintiff, as herein below alleged, under the doctrine of respondeat superior, in addition to all other theories of liability asserted against said entities in the causes of action which follow.

## II.   JURISDICTION

11.    This Court has jurisdiction over this matter pursuant to Nev. Const. art. VI, § 6, as this Court has original jurisdiction in all cases not assigned to the justices' courts.

12.    This Court has subject matter jurisdiction over this matter pursuant to NRS 4.370(1), as the matter in controversy exceeds $15,000, exclusive of attorney's fees, interest, and costs.

13.    Under NRS 14.080, this Court has statutory jurisdiction over Gamo Spain in that it is a corporation created and existing under the laws of a foreign country, to wit, Spain, and it manufactures, produces, makes, markets or otherwise supplies directly or indirectly a product for distribution, sale or use in this state, to wit, Gamo air guns; as such Gamo Spain may be lawfully served with any legal process in any action to recover damages for an injury to a person resulting from such distribution, sale or use in this state.

14.    That at all times relevant herein, it was reasonably foreseeable to Defendant Gamo Spain that when its products entered the State of Nevada, that Defendant Gamo Spain could be expected to be sued in the state where its products caused the injury. Jurisdiction is appropriate under the Due Process Clause.

15.    Upon information and belief, Defendant Gamo Spain was aware of the national distribution system of its air rifles, including the Shadow Sport, and intended such national

4

distribution, and as a consequence of that awareness, Defendant Gamo Spain indirectly and/or directly served the national market and derived economic benefit therefrom. As such, Defendant Gamo Spain could reasonably anticipate being subject to suit in any forum within that market where its product caused injury.

16.     Upon information and belief, Defendant Gamo Spain directly and purposefully distributed and marketed its Gamo air rifles within the State of Nevada by distributing and selling to retailers, including national and regional retailers such as Walmart, Big 5 Sporting Goods, Bass Pro, and Dick's Sporting Goods, all of whom are known to sell their products in retail stores within the state of Nevada, including single shot, break barrel, spring piston air rifles like the Gamo Shadow Sport.

## III.     GENERAL ALLEGATIONS

17.     Plaintiff hereby re-alleges those allegations contained in paragraphs 1 through 16 herein and incorporates same by reference as though fully set forth herein.

18.     On or about April 15-16, 2016, Plaintiff Zachary Long was a guest at the house of Robert and Roberto Ramirez, father and son, respectively.

19.     Also visiting Robert and Roberto Ramirez at the same time were Donny Chalmers and his brother Brandon Chalmers.

20.     Zachary Long, Brandon Chalmers, and Donny Chalmers were friends with Roberto Ramirez, and were at the Ramirez house for a Friday night sleepover.

21.     Sometime prior to April 15-16, 2016, Robert Ramirez purchased a gun manufactured and distributed in the United States and Nevada by Gamo Spain.

22.     The Gun was a Gamo Shadow Sport .177 caliber pellet air rifle, which was a single shot break barrel, spring piston air rifle, capable of firing a lead .177 caliber pellet at velocities up to

1200 fps, serial number 04-1C-365162-09., which was manufactured on or about February 6, 2009. (Hereinafter referred to as "The Gun".)

23.     The Gun was in the same, or substantially the same, condition on April 15-16, 2016 as it was when it was first purchased, and had not been altered or modified.

24.     The Gun was manufactured by Gamo Spain and distributed in the State of Nevada.

25.     The Gun was in the Ramirez house in which the four young men were gathered and was out in the open.

26.     At approximately 1:00 A.M. on the morning of April 16, 2016, the four young boys were gathered in the family room of the Ramirez home.

27.     At approximately 1:00 A.M. on the morning of April 16, 2016, Donny Chalmers walked into an adjacent room where he picked up The Gun, and as he was holding The Gun, it fired.

28.     Donny Chalmers was unaware that a pellet fired from The Gun could penetrate a human skull and lodge the pellet in a person's brain.

29.     Donny Chalmers was unaware that The Gun was capable of causing death or serious and permanent bodily injuries.

30.     Donny Chalmers was unaware that The Gun was loaded and cocked.

31.     There was nothing on The Gun, or about the condition of The Gun, that would indicate to Donny Chalmers that The Gun was loaded, or that would alert Donny Chalmers that The Gun was loaded and cocked. He had no idea that The Gun had a pellet in it, and that it was cocked and loaded.

32.     Sometime prior to the evening of April 15, 2016, and prior to the time the boys arrived at the Ramirez home for the sleepover, Roberto Ramirez has cocked and loaded The Gun to shoot at a pigeon in the back yard, but before he could fire, the pigeon flew away.

6

33.     Roberto Ramirez placed the loaded and cocked Gun by the doorway to the back yard where it was located when Donny Chalmers picked it up.

34.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that children under the age of eighteen were being shot and injured or killed by Gamo single shot, break-barrel, spring piston air rifle when the shooter did not know that the gun was cocked and loaded and did not know the dangerous characteristics of these types of guns.

35.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that a boy in Puerto Rico, Isaias Marin-Torres, had been shot and killed by his teenage brother who claimed he did not know a Gamo Shadow 1000, a gun with many similarities to The Gun that shot Plaintiff, was cocked and loaded.

36.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that a boy in Louisiana, Rashaad Picquet, had been shot in the head by a teenage boy with a Gamo Model 850 air gun. The boy claimed he did not know the Gamo 850, a single shot, break-barrel, spring piston air rifle, with many similarities to The Gun that shot Plaintiff, was cocked and loaded. The boy claims the gun unexpectedly fired even though he never pulled the trigger. The bullet penetrated Rashaad's skull causing serious and permanent injuries.

37.     Prior to April 16, 2016, Defendant Gamo Spain (and/or its agents) knew that on or about August 15, 2014 in McAlester, OK, a twelve-year-old boy, Justin Ingle, was shot in the head and later died when his eleven year old friend was playing with a Gamo air rifle. The friend did not know the rifle was cocked and loaded when he picked it up to play with it.

38.     Defendant Gamo Spain was aware that in 2006 the Gamo Shadow Sport, and other Gamo single shot, break barrel, spring piston air guns had been the subject of a recall by the Consumer

7

Product Safety Commission (CPSC) because those guns could unexpectedly fire without anyone touching the trigger.

39.     Defendant Gamo Spain and Gamo US advised the CPSC the unexpected firing was caused by the scope mount. While there may have been an issue with the scope mount, upon information and belief, Gamo US and Defendant Gamo Spain failed to advise the CPSC that the problem was not fully corrected and therefore its statements to the CPSC were false and misleading.

40.     Upon information and belief, the problem with these Gamo single shot, break barrel, spring piston air guns, including the Gamo Shadow Sport, unexpectedly firing when the trigger was not being pulled at the moment of firing was not corrected.

41.     On April 16, 2016, several models of Gamo single shot, break barrel, spring piston air guns, including the Gamo Shadow Sport, that could unexpectedly fire without anyone touching the trigger were still being sold, being used, and/or were in the hands of unsuspecting users, such as Donny Chalmers.

42.     The Gun was defective in that The Gun could unexpectedly fire when the trigger was not being pulled.

43.     The Gun was defective in that sometimes The Gun can fire when the trigger is not being pulled and the user is attempting to engage the safety, or the gun can fire even if the safety is engaged.

44.     Even though Defendant Gamo Spain knew, or should have known, that several models of Gamo single shot, break barrel, spring piston air guns, including the Gamo Shadow Sport, could unexpectedly fire without anyone touching the trigger and were in the hands of unsuspecting users, such as Donny Chalmers, Defendant Gamo Spain did not take reasonable steps to correct

the problems, to remove these dangerous guns from unsuspecting users, or to provide an adequate

warning of the dangerous condition.

45.    The trigger sear and sear bar were defective in that the interface surface between the two

parts had rounded edges which made it possible for the rifle to be left in a state (the "null region")

in which it could fire by being bumped and/or touching the safety, under certain foreseeable

conditions. This defect made it possible for the rifle to fire without operating/pulling the trigger

and fire with the safety in the "ON" position. This condition is a design defect resulting from

Defendant Gamo Spain's design and manufacturing specification that the sear and sear bar have

rounded edges. The condition was made even worse by Defendant Gamo Spain's failure to

adequately harden the metal component parts at issue.

46.    These defects exist in numerous rifles and various models that Defendant Gamo Spain

made and those currently in production for sale to consumers. Defendant Gamo Spain and Gamo

US had received complaints from users about rifles unexpectedly firing. The "null region" defect

was also reported in blog articles on the internet prior to the manufacture of the rifle which injured

Plaintiff, but Defendant Gamo Spain failed to adequately investigate those reports and address this

significant safety concern.

47.    The original design of the Gamo rifle trigger mechanism recognized that the problem could

occur and made provision to prevent it by including a mechanism blocking release of the sear if

the trigger was not pulled. At some point to lower costs slightly, Defendant Gamo Spain stopped

manufacturing rifles with this safety feature functioning, even though the parts designs which

included vestiges of the safety system continued to be used. Defendant Gamo Spain just did not

maintain the tolerances necessary for the system to function. Thus, Defendant Gamo Spain

actually had an alternative design which would have prevented the injury to Plaintiff that was built into its rifles, but Defendant Gamo Spain failed to use it.

48.     Defendant Gamo Spain could have made an even safer design by using the safety mechanism referenced above and making the operating surfaces of the sear and sear bar interface sharp instead of rounded and making them from harder metal. This alternative design is used in many other pellet guns and other types of firearms.

49.     On April 16, 2016, The Gun was loaded with a Gamo Hunter .177 caliber lead pellet designed for greater impact, which was manufactured and distributed by Defendant Gamo Spain.

50.     The Gun did not have an automatic safety that would automatically engage and prevent the trigger from being pulled unless and until the user, including Donny Chalmers, released and disengaged the safety. At all times herein, Defendant Gamo Spain knew that many other manufacturers and distributors of single shot break barrel air guns included an automatic safety on its guns, and that the inclusion of such on Gamo air guns was feasible and would not affect the performance of the rifle.

51.     The Gun did not have a load indicator or cocking indicator that would have alerted a user, including Donny Chalmers, that The Gun was loaded and cocked even though the inclusion of such on Gamo air guns was feasible and would not affect the performance of the rifle.

52.     The Gun failed to meet trigger pull standards that are meant to protect users and victims from accidental shootings and injuries.

53.     The Gun did not have warnings that would alert a user, including Donny Chalmers, of the dangerous conditions of The Gun, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer the dangerous conditions of The Gun.

10

54.    Neither The Gun nor any written material provided with the gun, had any warnings that the gun could unexpectedly fire when the trigger was not being pulled.

55.    Neither The Gun nor any written material provided with the gun had any warnings that the trigger sear and sear bar were or could be defective in that the interface surface between the two parts had rounded edges which made it possible for the rifle to be left in a state (the "null region") in which it could fire by being bumped and/or touching the safety, under certain foreseeable conditions and that this made it possible for the rifle to fire without operating/pulling the trigger and fire with the safety in the "ON" position.

56.    The Gun did not have warnings that would alert a user, including Donny Chalmers,

a.    That The Gun was, or may be, loaded and cocked, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer that The Gun was, or may be, loaded and cocked.

b.    The user needed to undertake any investigation to determine if The Gun was cocked and loaded prior to handling The Gun, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer he needed to undertake any investigation to determine if The Gun was cocked and loaded prior to pulling the trigger.

c.    Of the of the true nature and extent of the severity injuries that could occur if a person was struck with a pellet fired from The Gun, and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer the true nature and extend of the severity injuries that could occur if a person was struck with a pellet fired from The Gun.

d.    That a cocked and loaded gun maintained its muzzle velocity and penetrating power even when The Gun had been cocked for a period of time prior to shooting.

11

e.   About the nature of the hazard, the consequences, avoidance, and seriousness level of The Gun, as required under ANSI Z535 (et seq), and to the extent there were any such warnings, they were inadequate to alert potential users or to convey to the reasonable consumer the nature of the hazard, the consequences, avoidance, and seriousness level of The Gun.

57.   Defendant Gamo Spain did not provide an adequate warning on The Gun as required under Nevada law, where a product must include a warning that adequately communicates the dangers that may result from its use or foreseeable misuse; otherwise, the product is defective.

58.   In Nevada, a general warning is insufficient, and Defendant Gamo Spain failed to provide an adequate warning on The Gun as required under Nevada law that is (1) designed to reasonably catch the consumer's attention, (2) that the language be comprehensible and give a fair indication of the specific risks attendant to use of the product, and (3) that warnings be of sufficient intensity justified by the magnitude of the risk.

59.   The Gun did not have a mechanism to release the spring after The Gun had been loaded and cocked, but not fired, for a period of time.

60.   The Gun was designed such that there was not an effective, readily usable, method to unload a cocked and loaded gun.

61.   Defendant Gamo Spain failed to provide an adequate warning on The Gun as to how to properly and safely unload a cocked and loaded gun.

62.   Gamo Spain and Gamo US failed to provide any tools to allow a user to unload a cocked and loaded gun.

63.   Believing The Gun was not loaded and cocked, Donny Chalmers picked up The Gun and The Gun fired.

12

64.     Donny Chalmers would have heeded an adequate warning that The Gun could fire unexpectedly even when the trigger was not pulled, that the gun was cocked and loaded, and/or that the gun could seriously injure or kill a human being.

65.     The Gamo Hunter .177 caliber pellet, designed for greater impact, struck Plaintiff Zachary Long in the temple, penetrated his skull, and became lodged in his brain behind his eye, all of which caused severe and horrendous injuries.

66.     The pellet was not able to be removed by the surgeons and remains lodged in the brain of Plaintiff Zachary Long.

67.     Defendant Gamo Spain was aware of the serious injuries and damage that a Gamo Hunter .177 caliber lead pellet could inflict when fired from The Gun.

68.     According to the barrel of The Gun, some pellets can be fired from The Gun at 1200 fps while others with lead pellets, such as the pellet that struck Plaintiff Zachary Long, travel at a velocity up to 1000 fps.

69.     Defendant Gamo Spain was aware that The Gun, firing these Gamo Hunter pellets, could inflict serious bodily injury or death.

70.     An air gun, like The Gun, which is powerful enough to take down a hog, penetrate the human skull, or kill a person is not a firearm under Federal law.

71.     Neither the State of Nevada nor the Federal government have laws regulating the sale of air guns such as The Gun, but many other states and other countries have laws regulating air guns, such as The Gun used in this case due to the serious nature of the injuries they can inflict.

72.     Defendant Gamo Spain was aware of safety restrictions placed upon such air guns by these other states and countries due to the dangers associated with air guns and the serious injuries they could cause.

73.     It is well known in the industry, including to Defendant Gamo Spain, that air guns, such as the pellet gun in this case, are purchased for and used by children and/or persons with little to no experience in the handling of guns, such as Donny Chalmers.

74.     Defendant Gamo Spain also knew from their surveys that the majority of air guns purchased are purchased as gifts for someone else, and the overwhelming majority of those gifts are for children and grandchildren.

75.     Defendant Gamo Spain also knew air guns can be sold to children in many states, such as Nevada, that do not regulate the sale of air guns such as The Gun or restrict the age at which a child can purchase an airgun.

76.     Defendant Gamo Spain failed to take reasonable steps in the design, manufacture and distribution of The Gun, and in the warnings to potential users of The Gun, to prevent the injuries suffered by Plaintiff.

## IV.    FIRST CLAIM FOR RELIEF

### (NEGLIGENCE)

77.     Plaintiff repleads and realleges, and incorporates them herein by reference, each and every allegation contained in paragraphs 1-76 as if though fully restated herein.

78.     As set forth hereinabove, Defendant Gamo Spain had a duty to Plaintiff, which duty was breached, causing the injuries and damages set forth herein.

79.     Defendant Gamo Spain had a duty to take reasonable precautions to prevent a foreseeable risk of harm.

80.     Prior to April 16, 2016 Defendant Gamo Spain knew, or should have known, that injuries occurred, including death or serious and permanent injuries, when someone was shot with a Gamo air rifle by someone who did not know the gun was cocked and loaded.

14

81.     Defendant Gamo Spain breached its duty to Plaintiff, and was negligent, with regard to the warnings, design and manufacture of The Gun, including, but not limited to, some and/or all of the matters described in Paragraphs 17-76 above and the other Paragraphs herein.

82.     Defendant Gamo Spain further breached its duty to Plaintiff by failing to take the steps necessary to ensure that the Gamo air rifles it was distributing, including The Gun, were safe, that the warnings were adequate, and that the design and manufacture of the Gamo air rifles it was distributing, including The Gun, were free from design and manufacturing defects.

83.     As a direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future and for the rest of his life, all to his general damage in an amount in excess of $15,000.00.

84.     As a further and direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long has incurred special damages including expenses for medical care and treatment in the past and he will continue to incur expenses for medical care and treatment in the future and for the rest of his life, all in an amount in excess of $15,000.00, and in a sum according to proof at trial.

85.     As a further direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer a loss of earnings and earning capacity, in the past and in the future and for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

86.     As a further direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer a devastating and horrendous physical

15

impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

87.     As a further direct and proximate result of the breaches of duty by the defendant, as herein alleged, Plaintiff Zachary Long was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

88.     The conduct of Defendant Gamo Spain, as herein alleged, was done with a conscious and reckless disregard for the rights and safety of others, including Plaintiff Zachary Long, and/or Defendant Gamo Spain is guilty of oppression, fraud or malice, express or implied, and Plaintiff Zachary Long, in addition to the compensatory damages sought herein, is entitled to recover exemplary and punitive damages for the sake of example and by way of punishing the defendant in an amount in excess of $15,000.00 pursuant to NRS 42.005 et. seq.

89.     It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

## V.     SECOND CLAIM FOR RELIEF
### (STRICT PRODUCTS LIABILITY)

90.     Plaintiff repleads and realleges, and incorporates them herein by reference, each and every allegation contained in paragraphs 1-89 as if though fully restated herein.

91.     As set forth herein, Defendant Gamo Spain was the designer, manufacturer and distributor of air guns, including The Gun that was used in this case, and was otherwise engaged in the business of selling such a product, and placed The Gun in the stream of commerce which it expected to, and did, reach the user or consumer without substantial change in the condition in which it is sold.

16

92.     The Gun was unreasonably unsafe or unreasonably dangerous and in a defective condition when it was designed, manufactured, and/or sold, which defects include, but are not limited to, some and/or all of the matters described in Paragraphs 17-76 above and the other Paragraphs herein.

93.     These defects were known to Defendant Gamo Spain but were unknown to Plaintiff or Donny Chalmers on April 16, 2016.

94.     These defects made The Gun unreasonably dangerous to users and foreseeable users, such as Donny Chalmers, and to foreseeable victims of these defects such as Plaintiff.

95.     Defendant Gamo Spain placed The Gun in the stream of commerce which it expected to, and did, reach the user or consumer, including Donny Chalmers, without substantial change in the condition in which it was sold.

96.     The Gun was in the same, or substantially the same condition on the date Plaintiff was injured as when it was placed into the stream of commerce by Defendant Gamo Spain.

97.     The defects include, but are not limited to, lack of an auto safety, lack of a cocked or load indicator, lack of adequate warnings, lack of a method to unload a cocked and loaded gun, inability to readily determine if a gun is cocked and loaded, insufficient trigger pull, and The Gun could fire when the trigger was not being pulled, all as set forth hereinabove.

98.     As a direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer great pain and suffering of body and mind, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future and for the rest of his life, all to his general damage in an amount in excess of $15,000.00.

17

99.    As a further and direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long has incurred special damages including expenses for medical care and treatment in the past and he will continue to incur expenses for medical care and treatment in the future and for the rest of his life, all in an amount in excess of $15,000.00, and in a sum according to proof at trial.

100.    As a further direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer a loss of earnings and earning capacity, in the past and in the future and for the rest of his life in an amount in excess of $15,000.00, and in a sum according to proof at trial.

101.    As a further direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer a devastating and horrendous physical impairment, which impairment is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

102.    As a further direct and proximate result of the conduct of Defendant Gamo Spain, as herein alleged, Plaintiff Zachary Long was caused to suffer a dreadful and unwanted disfigurement which disfigurement is permanent and will continue in the future and for the rest of his life in an amount in excess of $15,000.00.

103.    The conduct of Defendant Gamo Spain, as herein alleged, was done with a conscious and reckless disregard for the rights and safety of others, including Plaintiff Zachary Long, and/or Defendant Gamo Spain is guilty of oppression, fraud or malice, express or implied, and Plaintiff Zachary Long, in addition to the compensatory damages sought herein, is entitled to recover exemplary and punitive damages for the sake of example and by way of punishing the defendant in an amount in excess of $15,000.00 pursuant to NRS 42.005 et. seq.

104.    It has become necessary for plaintiff to retain the services of an attorney to prosecute this action, and plaintiff is therefore entitled to attorney's fees and costs of suit.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as set forth below:

1.    For general damages, including but not limited to pain and suffering, a loss of his enjoyment of life, hedonic damages, and other emotional and physical pain, in the past and in the future, in an amount in excess of $15,000.00;

2.    For special damages, including but not limited to medical expenses for medical care and treatment, in the past and in the future, in an amount in excess of $15,000.00;

3.    For damages for loss of earnings and earning capacity, in the past and in the future in an amount in excess of $15,000.00;

4.    For damages for physical impairment, in the past and in the future, in an amount in excess of $15,000.00;

5.    For damages for disfigurement, in the past and in the future, in an amount in excess of $15,000.00;

6.    For exemplary and punitive damages against Defendant Gamo Spain in an amount in excess of $15,000.00;

7.    For a finding that Gamo US is the alter ego of Defendant Gamo Spain;

8.    For attorney's fees and costs;

9.    For pre-judgment and post-judgment interest; and

10.    For such other and further relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.   <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 13th day of July, 2021.

MURDOCK & ASSOCIATES, CHTD.
ECKLEY M. KEACH, CHTD.

/s/ Eckley M. Keach
Robert E. Murdock     Bar No. 4013
Eckley M. Keach     Bar No. 1154
521 South Third Street
Las Vegas, NV  89101
Attorneys for Plaintiff

# EXHIBIT F

# EXHIBIT F

1
2
3
4
5

**LOREN S. YOUNG, ESQ.**
Nevada Bar No. 7567
lyoung@lgclawoffice.com
**LINCOLN, GUSTAFSON & CERCOS, LLP**
3960 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:     (707) 257-1997
Facsimile:     (702) 257-2203

6

*Attorneys for Defendant Gamo Outdoor S.L.U.*

7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9
10
11
12
13
14
15
16

ZACHARY LONG, individually,

          Plaintiff,

v.

GAMO   OUTDOOR   S.L.U.,   a   Spanish
Corporation; DOES I through X, inclusive; and
ROE CORPORATIONS I through X, inclusive,

          Defendants.

Case No. 2:22-CV-00670

**DECLARATION OF FRANCISCO
JAVIER MÉNDEZ RODRÍGUEZ**

17
18

CITY OF BARCELONA    )
                       )    ss.:
COUNTRY OF SPAIN    )

19
20

     I, Francisco Javier Méndez Rodríguez, being duly sworn, hereby deposes and says as follows:

21

     1.    I am over eighteen (18) years of age, and I am fully competent to make this Declaration.

22
23

     2.    I am currently the CFO of Gamo Outdoor S.L.U. ("Gamo S.L.U."), the Defendant in the above-captioned matter.  As such, I am fully familiar with the facts as hereinafter set forth.

24
25

     3.    I submit this Declaration in support of Gamo S.L.U.'s Motion to Dismiss for lack of personal jurisdiction.

26
27
28

     4.    I have reviewed the pleadings filed in connection with the matter and I have full knowledge of the allegations being asserted by the Plaintiff.

5.   As I understand it, the product at issue in this matter is a Gamo Shadow Sport air rifle that was purchased by a non-party to this matter in a Big 5 retail store in or around Las Vegas, Nevada.

6.   Gamo S.L.U. is a manufacturer of air guns, components, accessories and other products ("products").

7.   Gamo S.L.U. is a corporation organized under the laws of Spain with its principle place of business at Crta. Santa Creu de Calafell, nº43, 08830, Sant Boi de Llobregat,  Barcelona, Spain.

8.   Gamo S.L.U. does not have any offices, facilities or employees in the State of Nevada and does not keep any of its business records in Nevada.

9.   Gamo S.L.U. has never filed for, nor sought, status as a Nevada company or as a foreign company doing business in the Nevada.

10.   Gamo S.L.U. does not have any employees or agents who reside or work in Nevada or who seek to service the Nevada market.

11.   Gamo S.L.U. does not have anyone authorized to accept service of process in Nevada.

12.   Gamo S.L.U. does not have a telephone listing in Nevada, does not pay any taxes in Nevada and  has no assets of any kind, either real property or liquid assets, or any bank accounts, located in Nevada.

13.   Gamo S.L.U. does not conduct advertising or promotional activities in Nevada nor specifically target its advertising to the Nevada market.

14.   Gamo S.L.U. does not sell its products directly to any individual customers or consumers or directly to retail sellers in Nevada.

15.   Gamo Outdoor USA, Inc. ("Gamo USA") was the only distributor of Gamo products in the United States until June 30 2020, at which point it dissolved and Daisy Manufacturing Corp. ("Daisy") became the sole U.S. distributor of Gamo products. Daisy is a Delaware corporation with an office and warehouse in Rogers, Arkansas. Gamo USA was previously a Florida corporation and previously

had facilities in Florida, Arkansas and Missouri. To the best of Gamo S.L.U.'s knowledge, Gamo USA and Daisy have never maintained any offices in Nevada and have never held any assets in Nevada.

16.   Gamo S.L.U. does not have, nor does it exercise, any control over Gamo USA and/or Daisy, or their current or prior business, sales, marketing or advertising decisions. Gamo S.L.U. does not control the channels by, or markets in, which the products were sold by Gamo USA or any other distributor. Gamo S.L.U. does not have, nor does it exercise, control over how or by what means Gamo USA, Daisy, or any other distributor sells products.

17.   Gamo S.L.U., Gamo USA and Daisy were and are independent corporate entities that have the same ultimate parent company. Gamo S.L.U. maintains corporate formalities and has separate bank and/or financial accounts from Gamo USA and Daisy.

18.   None of the distributors, including Gamo USA and Daisy, are agents of Gamo S.L.U.

19.   To the best of its knowledge, Gamo S.L.U. does not work with any specific distributors, importers, dealers or retailers in Nevada or that serve the market in Nevada.

20.   Gamo S.L.U. has no contracts to import, distribute, sell or transport its products into Nevada.

21.   Gamo S.L.U. products destined for Daisy are currently shipped to Daisy's facility in Arkansas, and in the past, have been shipped to Gamo USA's facilities in Florida, Arkansas and Missouri.

22.   Gamo products are, and have always been, sold Free on Board ("FOB") origin, and therefore, title to the products pass from Gamo S.L.U. to distributors such as Gamo USA and Daisy upon shipment in Spain.  Gamo S.L.U. relinquishes all control over the products after they are shipped.

23.   Gamo S.L.U. has no control over the ultimate destination of the products and has no knowledge of where the products are sold after title is transferred to the independent distributors.

24.   Gamo S.L.U. does not perform warranty repairs and is not aware of any warranty information for any individuals located in Nevada.

25.  The subject air rifle was manufactured on or about February 6, 2009 and sold to Gamo USA. Gamo Spain did not have control over any subsequent sales of the air rifle or any knowledge of such sales prior to Plaintiff's claim.

I hereby affirm that the foregoing statements made by me are true.  I understand that if any of the foregoing statements made by me are willfully false, I am subject to the penalties of perjury.

Dated:  April 29, 2022

_____

Name: Francisco Javier Méndez Rodríguez

Title: CFO GAMO OUTDOOR S.L.U.

-4-